**KOLL REAL ESTATE GROUP, INC., Appellant,**

v.

**Alton P. HOWARD, et al., Appellees.**

**No. 14–03–00528–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 12, 2004.

 

Panel consists of Justices HUDSON, EDELMAN, and GUZMAN.

## OPINION

EVA M. GUZMÁN, Justice.

In this accelerated appeal, Koll Real Estate Group, Inc. ("Koll"), challenges the trial court's denial of its special appearance. We reverse and remand.

### I. BACKGROUND

In the underlying action, thirteen plaintiffs [1] filed suit against Koll and numerous other defendants, alleging asbestos related injuries. In their pleadings, plaintiffs sued Koll as "successor in interest to M.W. [K]ellogg Company and Pullman, Inc." Koll filed a special appearance in the trial court asserting it lacked sufficient contacts with Texas and it was not the corporate successor to M.W. Kellogg Company ("Kellogg"). Plaintiffs responded, arguing that Koll had sufficient contacts because "its constituent predecessor corporations, M.W. Kellogg and Pullman, Inc. had contacts with Texas that are imputed to Koll."

There was no oral hearing conducted on Koll's special appearance; the trial court decided the matter based on the special appearance, plaintiffs' response, and the evidence on file. The trial court signed an order overruling Koll's special appearance on April 10, 2003. Koll requested findings of fact and conclusions of law, but none were issued. This appeal ensued.

On appeal, Koll argues the trial court erred in denying its special appearance because it is not the successor to Kellogg, it did not assume Kellogg's liabilities, and it lacks any relationship to Texas which

Jonathan C. Allen, Patricia Chamblin, T. Phillip Brent, Beaumont, for appellant.

Helen A. Cassidy, Ian Patrick Cloud, Houston, M.C. Carrington, Beaumont, for appellees.

---

1. These plaintiffs are: Alton P. Howard, Jr., Charles E. Jackson, Marvin Jackson, Jesse L. Julius, Martin J. Katz, Tommy Laird, Willie Manning, Joseph A. Marullo, Estate of Howard A. Powell, Sr., Joe H. Skipper, Curtis L. Smith, Albert T. Williams, and Richard Williams.

would make an exercise of personal jurisdiction proper.

### A. Corporate Entities Involved

The record indicates that Pullman began its corporate existence in 1927. In late 1980, Wheelabrator Chicago, Inc. ("Wheelabrator") merged with Pullman, and the new corporate entity became Pullman, Inc. Wheelabrator–Frye, Inc. ("WFI") acquired all the stock of Pullman. Thereafter, Pullman was a wholly owned subsidiary of WFI. At that time, M.W. Kellogg Division, an engineering and construction firm, was an unincorporated division of Pullman. In January 1981, WFI caused Pullman, Inc. to be renamed Kellogg. At the same time, it spun off Pullman's transportation businesses into separate companies, but retained the M.W. Kellogg engineering business in the renamed entity.

In 1983, WFI became a wholly owned subsidiary of The Signal Companies, Inc. ("Signal"). In 1985, Signal merged with Allied Corporation and became a wholly owned subsidiary of Allied–Signal, Inc. ("Allied–Signal"). In 1986, Allied–Signal spun off thirty-nine of its businesses into a new corporation called The Henley Group, Inc. ("Henley I"). Among the companies which Allied–Signal contributed to Henley I was Kellogg.

By Purchase Agreement dated January 11, 1988, Henley I (at the time of the agreement, The Henley Group, Inc.), Kellogg, and Kellogg Newco One, Inc., sold Kellogg's various assets to Dresser Industries; specifically, those assets relating to "Open Contracts or Jobs." In the agreement, Dresser also assumed all liabilities in connection with "Open Contracts or Jobs;" other "excluded liabilities" were not assumed by Dresser, specifically those related to "Closed Contracts or Jobs." Further, the agreement contained an exchange of indemnities whereby Henley I, Kellogg, and Newco One indemnified Dresser against any loss or liability arising from, among other things, a "Closed Contract or Job," and Dresser indemnified those same parties from any loss or claims regarding any "Open Contract or Job."

In December 1988, Henley I entered into a Transition Agreement with Henley Newco, Inc. in which it completed a reverse spinoff, placing certain assets and businesses into a subsidiary.[2] At that time, Henley I changed its name to the Wheelabrator Group, Inc. ("WGI") and the spinoff corporation was renamed The Henley Group, Inc. ("Henley II"). Specifically, relative to this appeal, Henley II acquired Henley I's assets and obligations regarding the "M.W. Kellogg Company Disposition." In addition, the Transition Agreement contains an exchange of indemnities, whereby each company agreed to indemnify the other against losses arising out of or due to the failure of either party to perform their obligations arising under the Transition agreement. The indemnifications occur only under certain circumstances and pursuant to procedures contained within the agreement.

Under the Transition Agreement, Henley I retained several businesses, including Resco Holdings, Inc., Wheelabrator Technologies, Inc., The Henley Group, Inc., and KELL Holding Corporation. All stock of Kellogg, then a corporate shell with no assets or operations, went to WGI. Kellogg has remained a wholly owned subsidiary of WGI.[3]

---

**2.** According to the affidavit of WFI's general counsel, the reverse spinoff occurred in January 1988.

**3.** Kellogg has undergone a number of name changes since 1988. Following the sale of its assets to Dresser, Kellogg became Henley/MWK Holdings, Inc. In April 1988, its

Also, in December 1988, Henley I, Henley II, and Dresser entered into an Assignment, Assumption and Release Agreement whereby Henley II agreed to assume Henley I's obligations under the Dresser Purchase Agreement.

### B. Koll Real Estate Group, Inc.

Koll's successor was Henley II. In 1989, Henley II's name was changed to Henley Properties, Inc., and then to Bolsa Chica Company in 1992. In 1993, the corporate entity became the Koll Real Estate Group.[4]

### II. ARGUMENTS AND AUTHORITIES

In three issues, Koll argues the trial court erred in overruling its special appearance because: (1) Koll is not the corporate successor of Kellogg; (2) Koll did not agree to assume the liabilities of Kellogg; and (3) Koll's "only relationship with Texas is that its predecessor was the assignee of the assignor's liability as indemnitor in connection with the sale of certain assets and businesses by the assignor's subsidiary, Kellogg, to the purchaser, Dresser." Appellees contend that jurisdiction is proper because Koll's corporate predecessor assumed liability for the acts of Kellogg and Pullman.[5]

### A. Standard of Review

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002); *Walker Ins.*

name was again changed to KELL Holdings Corporation, then in July 1989, KELL Holdings was merged into Resco Holdings, Inc., a subsidiary of WGI. WGI has undergone several name changes since 1988 also.

4. Currently, Koll operates as "California Coastal Communities."

*Servs. v. Bottle Rock Power Corp.,* 108 S.W.3d 538, 548 (Tex.App.-Houston [14th Dist.] 2003, no pet.). At the special appearance hearing, the burden shifts to the nonresident defendant to negate the bases of personal jurisdiction asserted by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex. 2002); *Bottle Rock,* 108 S.W.3d at 548. On appeal, an appellate court reviews all evidence in the record to determine if the nonresident defendant negated the grounds for personal jurisdiction. *Bottle Rock,* 108 S.W.3d at 548.

Whether a court has personal jurisdiction over a defendant is a question of law. *Coleman,* 83 S.W.3d at 805–06; *Marchand,* 83 S.W.3d.at 794. However, in resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman,* 83 S.W.3d at 806. On appeal, a trial court's determination to deny a special appearance is subject to *de novo* review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Id.* When the trial court does not issue findings of fact, as in this case, reviewing courts should presume the trial court resolved all factual disputes in favor of its judgment. *Id.*

Here, Koll contends there are no disputed facts because the only issue is whether Koll assumed the liabilities of its predecessors, which, according to Koll, is a question of law based upon the interpretation of contracts. On review, for legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the legal

5. Appellees do not make any argument regarding Pullman's contacts with Texas and presumably, reference that company only as Kellogg's corporate predecessor.

sufficiency challenge fails. *Marchand,* 83 S.W.3d at 795.

### B. Personal Jurisdiction

Texas courts may exercise jurisdiction over a nonresident defendant if two conditions are satisfied: (1) the Texas long-arm statute authorizes the exercise of personal jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Bottle Rock,* 108 S.W.3d at 546 (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990)). The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE § 17.042; *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *Marchand,* 83 S.W.3d at 795. As a result, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Koll. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991); *Bottle Rock,* 108 S.W.3d at 546–47.

Under federal constitutional requirements of due process, personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Marchand,* 83 S.W.3d at 795; *Bottle Rock,* 108 S.W.3d at 547.

The minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *See Guard-*

*ian Royal,* 815 S.W.2d at 228. We must determine whether the nonresident defendant has " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State,' " invoking the benefits and protections of the state's laws. *Bottle Rock,* 108 S.W.3d at 547 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). A nonresident defendant that purposefully avails itself of the privileges and benefits of conducting business in the forum state has sufficient contacts with the forum to confer personal jurisdiction on the court. *Id.* The purposeful availment requirement ensures the nonresident defendant's contacts derive from its own purposeful activity and not the unilateral activity of the plaintiff or a third party. *Id.* A defendant is not subject to jurisdiction in a Texas court if its Texas contacts are random, fortuitous, or attenuated. *Coleman,* 83 S.W.3d at 806.

An exercise of jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* In this inquiry, it is incumbent upon the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### III. ANALYSIS

In the trial court, Koll argued that an assertion of jurisdiction was improper because it was not, as appellees had alleged, the corporate successor to Kellogg. Koll further argued it was a Delaware corporation with no independent Texas contacts and it had not committed a tort against plaintiffs in Texas. In support of its special appearance, Koll furnished an affidavit stating it was a Delaware company which had never done business in Texas, various

documents tracing the corporate history of The Henley Group and Wheelabrator Technologies, and documents evidencing the various name changes of the Henley II entity. Koll also provided a copy of the Transition Agreement.

In response to Koll's special appearance, the appellees argued that Koll expressly assumed the liabilities of Kellogg through the Transition Agreement and an Assignment, Assumption and Release Agreement. Appellees provided various certificates of incorporation, merger and amendments tracing the corporate existence of Pullman and Kellogg. They also provided deposition testimony and earnings records for plaintiffs unrelated to this suit, answers to interrogatories from another suit involving Resco Holdings, Inc., a copy of the Transition Agreement, the Purchase Agreement, and the Assignment, Assumption and Release Agreement.

Appellees alleged that the express language of the Transition Agreement, listing the "M.W. Kellogg Disposition" as a Henley II (Koll's predecessor) asset, indicates that Henley II agreed to assume the obligations of Henley I under the Dresser agreement. Subsequently, by virtue of the Assignment, the parties acknowledged Henley II was assuming those obligations and Dresser agreed to look to Henley II under the Purchase Agreement. Based on these documents, appellees argued in their response that Koll "stands in the shoes of M.W. Kellogg" and remains liable for their torts. Further, appellees argued that "a corporation that stands in the shoes of a constituent predecessor for liability purposes does so for jurisdictional purposes as well." Thus, appellees jurisdictional argument rests on the idea that, by assuming the liabilities of Kellogg, the contacts of Kellogg may be imputed to Koll.[6]

Under Texas law, two separate corporations are considered distinct entities. *Marchand*, 83 S.W.3d at 798. Therefore, for jurisdictional purposes, a party seeking to ascribe one corporation's actions to another, by disregarding their distinct corporate entities, must prove this allegation. *Id.* (examining assertion of jurisdiction based on allegation of alter ego). To "fuse" a parent company and its subsidiary for jurisdictional purposes, plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. *Id.* at 799; *see Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 739 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Here, because appellees assert jurisdiction on the basis of the contacts of Koll's corporate predecessors, they bear the burden of proving those allegations. *See Marchand*, 83 S.W.3d at 798; *Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273, 278 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (finding plaintiff bears the burden of proving a subsidiary's contacts with a jurisdiction to establish jurisdiction over the parent corporation); *3–D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 139 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).[7] There is no dispute

---

**6.** Koll summarizes appellees jurisdictional argument as appellees attempting to impute the contacts of Kellogg to Kellogg's parent, Henley I, and then impute those contacts to the parent's assignee, Henley II, and further imputing those contacts to the assignee's successor, Koll.

**7.** In their Response, appellees stated: "The issue is not whether Koll is the corporate successor to M.W. Kellogg Company. Even assuming that Resco Holdings Inc. is the corporate successor of Kellogg, Koll is responsible for the liabilities of M.W. Kellogg." Thus, in referring to Koll as a "corporate successor," appellees presumably use that term based upon the series of transactions between the corporate entities detailed above as opposed to the meaning associated with that term under the Texas Business Corporation Act. *See* Tex. Bus. Corp. Act art. 5.10(B)(2)

between the parties that Koll is not liable for appellees' injuries by virtue of its own Texas contacts. The only issue before us is whether Koll's corporate predecessors voluntarily assumed liability for the obligations of Kellogg, such that Kellogg's contacts may be imputed to Koll and the Texas court may properly assert personal jurisdiction over it.[8]

### A. *Koll Real Estate Group, Inc. v. Purseley*

We begin our discussion by acknowledging a recent opinion issued by our sister court, the First Court of Appeals. In *Koll Real Estate Group, Inc. v. Purseley*, under the same factual circumstances at issue here, but involving a different set of plaintiffs, the First Court of Appeals examined whether "by accepting an assignment of rights and liabilities under a purchase agreement, and agreeing to indemnify the purchaser for tort damages, some of which allegedly occurred in Texas, Koll has become amenable to suit in Texas, despite its own lack of minimum contacts thereto." 127 S.W.3d 142, 144 (Tex.App.-Houston [1st Dist.] 2003).

In *Purseley*, the court recounted the various corporate name changes, mergers, and spin-offs, and examined the Agreements at issue. *Id.* at 144–145. In concluding that Koll was not subject to jurisdiction in the Texas court, the *Purseley* court noted that "[n]owhere in the record does Koll assume 'contractual liability' to third parties for the torts allegedly com-

mitted by Kellogg in Texas." *Id.* at 147. Further, the court stated that at most, Koll received its predecessor's "responsibility *to indemnify Dresser*" for any liabilities that Dresser may suffer as a result of Kellogg's closed contracts. *Id.* (emphasis in original). Thus, the court went on to examine "whether an agreement to indemnify another for losses incurred in Texas, which a nonresident corporation acquires by assignment, is a sufficient basis for asserting personal jurisdiction over the nonresident corporation," and concluded that it was not. *Id.* The court cited to two Texas cases in support of its decision: one, finding an indemnification agreement was "not a substantial connection" between the defendant and Texas;[9] and the other, finding that a reinsurance contract was not a sufficient minimum contact which would permit a Texas court to assume personal jurisdiction over the foreign corporation.[10] *Id.* at 147.

The *Purseley* court also noted that, because the plaintiffs were alleging only specific jurisdiction, as they do in this case, even if an indemnity obligation were sufficient to establish a minimum contact with Texas, asserting jurisdiction over Koll would be improper because the cause of action does not arise from the contact, that is, the indemnity agreement. *Id.* at 148. Instead, plaintiffs assert asbestos related injuries, not that Koll has breached any duties it may have under the agreements at issue. *Id.* The *Purseley* court conclud-

---

(providing that a successor corporation may be liable for obligations expressly assumed).

8. We are mindful, on review, that the issue of ultimate liability is not a jurisdictional issue. *Bottle Rock,* 108 S.W.3d at 549. However, in this case, because jurisdiction is alleged to exist solely by virtue of contracts which plaintiffs contend also establishes liability, the jurisdictional issue is inherently intertwined with the question of liability. However, we

are not deciding, nor attempting to decide, any issues of ultimate liability and limit our findings to the jurisdictional issue, based solely upon the record before us.

9. *See Gessmann v. Stephens,* 51 S.W.3d 329, 337 n. 5 (Tex.App.-Tyler 2001, no pet.).

10. *See Malaysia British Assur. v. El Paso Reyco, Inc.,* 830 S.W.2d 919, 920 (Tex.1992).

ed plaintiffs were unable to assert specific jurisdiction over Koll. *Id.*

We agree with the conclusions of the First Court of Appeals. In this case, like *Purseley*, there is no dispute that Koll itself does not have sufficient minimum contacts to assert jurisdiction over it, nor do appellees contend Koll is liable under article 5.10 of the Texas Business Corporation Act. *See* TEX. BUS. CORP. ACT ANN. art. 5.10(B)(2) (providing that a successor corporation may be liable for obligations expressly assumed).[11] Instead, appellees assert specific jurisdiction based upon an alleged contractual assumption of liability. However, as in *Purseley*, there is no record evidence that Koll agreed to assume liability for the torts of Kellogg.

Beginning with the Purchase Agreement, Henley I, Kellogg, and Kellogg Newco One, Inc. agreed to sell all rights and interests in Kellogg's "open contracts or jobs." Dresser agreed to assume the liabilities arising out of those contracts and jobs. Excluded from that assumption of liability were those liabilities relating to closed jobs or contracts. Because there is no other disposition regarding the liabilities for closed contracts or jobs within the Purchase Agreement, the record reflects that those liabilities remained with the Kellogg entities. There was however, no assumption of liability by Henley I within the Agreement.[12]

Also, although in the Purchase Agreement Henley I and the Kellogg entities agreed to indemnify Dresser regarding closed contracts or jobs, this is not evidence of an assumption of liability by Henley I. It is, at most, as the First Court of Appeals concluded, an indemnity agreement. Moreover, although Henley I is referenced as the parent of Kellogg within the Purchase Agreement, appellees do not allege that Henley I is liable as the parent corporation, nor is there any evidence in the record establishing that Henley I had such control over Kellogg that we could impute its contacts to Henley I. *See Marchand*, 83 S.W.3d at 799; *see also Baldwin*, 36 S.W.3d at 278 (noting that plaintiff did not prove sufficient control because the record was silent on the issue); *Seminole*, 979 S.W.2d at 739 (rejecting the argument that the parent's corporate structure evidenced "control"). Thus, as stated by our sister court, the Purchase Agreement indicates that Henley I's obligations under the agreement are indemnity obligations regarding closed contracts or jobs. There is no indication in the document that Henley I agreed to assume liability for Kellogg's torts.

In addition, in the Transition Agreement between Henley I and Henley II, Henley II acquired "assets and businesses" of Henley I, including "commitments" relating to the "M.W. Kellogg Company *Disposition.*" (Emphasis added). However, be-

---

**11.** Article 5.10 of the Texas Business Corporation Act delineates two exceptions to successor non-liability which apply in the context of an corporate asset purchaser. *Shapolsky v. Brewton*, 56 S.W.3d 120, 139 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *see* TEX. BUS. CORP. ACT Art. 5.10. The first arises where the purchaser expressly assumes the seller's liabilities. *See Shapolsky*, 56 S.W.3d at 139. The second comes into play where an exception is "expressly provided by another statute." *Id.; see also McKee v. Am. Transfer & Storage*, 946 F.Supp. 485, 486–87 (N.D.Tex. 1996) (noting that Texas law does not general-

ly recognize successor liability for subsequent purchases of corporate assets); *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 756–59 (Tex.App.-Corpus Christi 1986, writ ref'd n.r.e.) (noting that the Texas Business & Corporations Act eliminates the doctrine of implied successor liability).

**12.** There is no evidence to indicate the plaintiffs' injuries in this case were due to "closed contracts or jobs" or "open contracts or jobs."

cause the record indicates that Henley I's only obligation regarding that disposition was an indemnity obligation for losses due to closed contracts or jobs, Henley II did not acquire any obligations beyond that, and consequently, did not acquire any liability regarding Kellogg's torts. Finally, under the Assignment between Henley I, Henley II, and Dresser, wherein Henley II acquired all obligations of Henley I under the Dresser Purchase Agreement, Henley II's obligations by virtue of that Assignment are necessarily limited to the obligations of Henley I under the Purchase Agreement, or in other words, as an indemnitor only.[13]

We also agree with the reasoning as set forth in *Purseley* regarding the indemnity obligations serving as a "minimum contact." Thus, even assuming the indemnity obligation sufficed as a minimum contact, because the plaintiffs' cause of action did not arise from the indemnity agreement, they cannot assert specific jurisdiction over Koll based on these agreements. *See Purseley,* 127 S.W.3d at 148.

### CONCLUSION

Based upon the foregoing, we conclude that the record does not support an assertion of personal jurisdiction over Koll. The record does not reflect that Koll has sufficient minimum contacts with Texas such that an assertion of personal jurisdiction would comport with due process. In addition, appellees have not established that the Texas contacts of Kellogg may be

imputed to Koll. We sustain Koll's issue on appeal, reverse the order denying Koll's special appearance, and remand the case with instructions to dismiss the claims against Koll for lack of personal jurisdiction.

---

**13.** Appellees also argue that a letter, dated June 13, 1990, from the Henley Group's General Counsel indicates Henley II is responsible for indemnification obligations under the Dresser agreement. Specifically, the letter states: "Resco Holdings, Inc. is the corporate successor to The M.W. Kellogg Company by operation of law, and it is in that entity that any indemnity obligations of the M.W. Kellogg Company under the Purchase Agreement now reside." This does not evidence an as-

sumption of liability and further, we do not disagree that Henley II may have indemnity obligations under the agreements at issue, as evidenced in this opinion. However, appellees assert personal jurisdiction over Koll based upon its having assumed liabilities of Kellogg. This alleged assumption of liability is not evidenced in the record. We note also, appellees reference page 2 of the letter, however, that page is missing from the record, including the supplemental record.