Reversed and Rendered and Opinion filed August 16, 2005









Reversed and Rendered and Opinion filed August 16,
2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00560-CV

____________

 

SCHOTT GLAS, Appellant

 

V.

 

ARTURO ADAME ET
AL. AND MARSHALL COLEMAN ET AL., Appellees

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause Nos. 94C1392
& 95H2295

 



 

O P I N I O N

This is an interlocutory appeal from the
denial of the special appearance of appellant Schott Glas.  Concluding the trial court erred in denying
the special appearance, we reverse.

                          Factual and Procedural Background








Appellees are a class consisting of
veterans of the 1991 Persian Gulf War, along with their families and
others.  The suit was filed in June 1994
and alleges that the defendants caused or contributed to their injuries from
so-called AGulf War Syndrome.@  In September 1995, appellees named as
additional defendants Schott Glas, a German commercial enterprise, and its
subsidiary, Schott Corporation, a New York corporation.[1]  Schott Glas is a German entity that
manufactures and sells specialized glassware, and appellees allege that Schott
Glas sold specialized glass vessels to Iraq that were later used in chemical
warfare during the Gulf War.  At the time
of the special appearance hearing, there were over 3,000 named plaintiffs and
over 50 defendants, and appellees assert that the putative class will number as
many as 100,000.

Schott Glas filed its special appearance
in February 1996, and after extensive jurisdictional discovery, briefing, and
hearings, the trial court denied Schott Glas=s special
appearance.  This appeal followed.  In three issues, Schott Glas argues that the
trial court erred in denying its special appearance because (1) it had
insufficient Aminimum contacts@ with Texas to
establish general jurisdiction, (2) exercising jurisdiction over it would
violate Atraditional
notions of fair play and substantial justice,@ and (3) the trial
court erred in overruling its objections to appellees= special
appearance evidence.

                                                      Analysis

                                                   Legal
Standard

Whether a trial court has personal
jurisdiction over a defendant is a question of law.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 805B06 (Tex. 2002) (AATCC@).  When the relevant jurisdictional facts are
undisputed, we review the trial court=s determination de
novo.  See id. at 806; Preussag Aktiengesellschaft v.
Coleman, 16 S.W.3d
110, 113 (Tex. App.CHouston [1st Dist.] 2000, pet. dism=d w.o.j.).  However, when the relevant facts are
disputed, a party may challenge the trial court=s underlying
factual conclusions for legal and factual sufficiency before determining
whether the trial court erred in granting or denying a special appearance.  ATCC, 83 S.W.3d at 806.  If the trial court does not issue findings of
fact, we presume the trial court resolved all factual disputes in favor of its
judgment.  Id.








The Texas long-arm statute governs Texas
courts= exercise of
personal jurisdiction over a nonresident defendant.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon 1997
& Supp. 2004B2005); Alenia Spazio, S.p.A. v. Reid,
130 S.W.3d 201, 210 (Tex. App.CHouston [14th
Dist.] 2003, pet. filed).  The long-arm
statute reaches as far as federal constitutional due process will allow, and
thus we rely on both federal and state precedent in reviewing the trial court=s personal
jurisdiction decision.  ATCC, 83
S.W.3d at 806; Alenia Spazio, 130 S.W.3d at 210. 

Personal jurisdiction is proper if the
defendant has established Aminimum contacts@ with Texas and
the exercise of jurisdiction comports with Atraditional
notions of fair play and substantial justice.@  ATCC, 83 S.W.3d at 806 (citing Int=l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1940)).  AThe purpose of the
minimum-contacts analysis is to protect the defendant from being haled into
court when its relationship with Texas is too attenuated to support
jurisdiction.@  Id.  Thus, a defendant must Apurposefully avail@ itself of the
benefits and protections of Texas law such that the defendant could reasonably
anticipate being called into a Texas court. 
See id.; Koll Real Estate Group, Inc. v. Howard, 130
S.W.3d 308, 312 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  This ensures that
a defendant is subject to personal jurisdiction based on its own purposeful activity
and not the unilateral acts of a third party. 
ATCC, 83 S.W.3d at 806; Koll Real Estate, 130 S.W.3d at
312.  Personal jurisdiction may not be
based on Texas contacts that are random, fortuitous, or attenuated.  ATCC, 83 S.W.3d at 806; Koll Real
Estate, 130 S.W.3d at 312.  It is the
quality and nature of the defendant=s contacts, rather
than the quantity, that is important to the minimum-contacts analysis.  ATCC, 83 S.W.3d at 809B10.

A defendant=s contacts with
the forum can give rise to either specific or general jurisdiction.  Specific jurisdiction is based on purposeful
contacts that give rise to the cause of action. 
Id. at 806.  General
jurisdiction allows personal jurisdiction based on contacts unrelated to the
litigation as long as those contacts are Acontinuous and
systematic.@  Id.
at 806B07. 
In this case, appellees allege only general jurisdiction.








The plaintiff has the initial burden of
pleading sufficient allegations to bring the nonresident defendant within the
provisions of the Texas long-arm statute. 
Id. at 807; Walker Ins. Servs. v. Bottle Rock Power Corp.,
108 S.W.3d 538, 548 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  Upon the filing
of a special appearance, the burden shifts to the defendant to negate all bases
of personal jurisdiction alleged by the plaintiff.  ATCC, 83 S.W.3d at 807; Bottle Rock,
108 S.W.3d at 548.  AThis standard does
not mean that the nonresident defendant must negate every possible ground in
the universe, but rather the acts in Texas alleged by the appellant to support
personal jurisdiction.@  Bottle Rock, 108 S.W.3d at 548.  

                                           Jurisdictional
Time Frame

Before we analyze whether Schott Glas had
sufficient minimum contacts with Texas to support the exercise of personal
jurisdiction, we must first determine the relevant time frame during which
those contacts must have occurred.  The
parties agree that the jurisdictional time frame begins in January 1986; the
issue is when it ends.  Schott Glas
contends that its only relevant contacts are those up until the date of
appellees= injuries, which is, at the latest, when
the Gulf War ended in the summer of 1991. 
Appellees maintain the jurisdictional time frame ends either on the date
the suit was filed, as some federal courts have held,[2]
or the date of the injury.[3]








This court and other Texas courts have
held that the relevant jurisdictional time frame ends on the date of the
injury.  See Scott v. Huey L.
Cheramie, Inc., 833 S.W.2d 240, 241 (Tex. App.CHouston [14th
Dist.] 1992, no writ) (holding that contract signed after injury occurred was
irrelevant to jurisdiction); Middleton v. Kawasaki Steel Corp., 687
S.W.2d 42, 45 (Tex. App.CHouston [14th Dist.] 1985, writ ref=d n.r.e.) (finding
the Acrucial period@ for assessing
personal jurisdiction to be when the allegedly defective product was sold and
caused injury); see also MedCost, L.L.C. v. Loiseau, No. 03-04-00489-CV,
__ S.W.3d __, 2005 WL 1241090, at *9 (Tex. App.CAustin May 26,
2005, no pet. h.) (AThe relevant contacts are those up to the
time of injury.@); Moni Pulo Ltd. v. Trutec Oil &
Gas, Inc., 130 S.W.3d 170, 173 n.1 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied) (citing Scott with approval); AmQuip Corp.
v. Cloud, 73 S.W.3d 380, 388 (Tex. App.CHouston [1st
Dist.] 2002, no pet.) (holding that telephone calls made after accident date
were irrelevant to jurisdiction). Accordingly, we hold that the jurisdictional
time frame in this case extends from January 1986 to the summer of 1991, the
latest appellees could have been injured. 
Thus, we will discuss only those contacts occurring during that time
period.

                                                Minimum
Contacts

Appellees argue that Schott Glas has
sufficient minimum contacts with Texas on the following three bases:  (1) by imputing to Schott Glas the contacts
of related German entities on the basis that they are a Asingle business
enterprise,@ (2) by concluding that Hank Merino of
Merino Sales, Inc., a sales representative based in Dallas, is Schott Glas=s agent and thus
imputing Merino=s contacts to Schott Glas, and (3) the
sale of Schott Glas products in Texas and Schott Glas=s alleged
post-sale service of goods in Texas.  We
consider each of these theories in turn.

                                         Contacts
of Related Entities

Schott Glas is one of two German affiates
of a third entity, a foundation established under German law over 100 years ago
called a AStiftung.@  Appellees have, through various theories in
their amended petitions, attempted to impute to Schott Glas the contacts of
these other two related entities.








In Texas, corporate entities are presumed
to be separate, and a plaintiff attempting to assert personal jurisdiction
against one defendant based on the contacts of another entity has the burden of
proving a basis for doing so.  See BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 798 (Tex. 2002); Le
Meridien Hotels & Resorts v. LaSalle Hotel Operating P=ship, 141 S.W.3d 870,
881 (Tex. App.CDallas 2004, no pet.); Koll Real Estate,
130 S.W.3d at 313.  Furthermore, each
basis for disregarding this presumption of corporate separateness must be
specifically pleaded or it is waived.  See
Villanueva v. Astroworld, Inc., 866 S.W.2d 690, 695 (Tex. App.CHouston [1st Dist.] 1993, writ
denied).

In their latest amended petition,
appellees attempt to combine the Texas contacts of these three German entities
under the German law theory of AKonzern,@ asserting that Athese entities are
to be considered a Konzern (group) because they share unified
management, participate in a common scheme to make profit, and are under the
domination of one player C [the Stiftung].@  In their brief, appellees state that they Ado not contend
that there is evidence showing that any of the Schott entities have failed to
follow corporate formalities or have abused the corporate form.@  Their brief makes no mention of their pleaded
Konzern theory, instead arguing the new, unpleaded theory that these three
entities constitute a Asingle business enterprise@ and thus, all of
their Texas contacts should be considered together.  We reject appellees= attempt to argue
this unpleaded theory for the first time on appeal.  See Reyes v. Marine Drilling Cos., 944
S.W.2d 401, 405 (Tex. App.CHouston [14th
Dist.] 1997, no writ) (holding that unpleaded personal jurisdiction theories are negated by
proof that defendant is a nonresident); Villanueva, 866 S.W.2d at 695
(noting that each basis for disregarding the corporate fiction must be
specifically pleaded or be waived).  We conclude that
appellees= single business enterprise theory
has been waived, leaving appellees with no basis on appeal for imputing to
Schott Glas any Texas contacts of its related German entities.

                                          Contacts
of Alleged Agent








Merino Sales,
Inc., owned by Hank Merino, is a Dallas-based company that serves as a sales
representative for various companies, including Schott Electronics, Inc. (ASE@), an indirect
subsidiary of Schott Glas that is headquartered in Connecticut.[4]  SE sells its own products as well as Schott
Glas=s products, and
Merino promotes and markets those products in Texas.  Appellees claim that Merino=s Texas contacts
should be imputed to Schott Glas.  SE and
Schott Glas are presumed to be distinct corporate entities, and appellees
specifically disavow any claim that Aany of the Schott
entities have failed to follow corporate formalities or have abused the
corporate form.@ 
Thus, appellees can impute Merino=s Texas contacts
to Schott Glas based only on some direct relationship between Schott Glas and
Merino, not on Merino=s relationship with SE.

In an attempt to establish this direct
relationship, appellees argue that Merino is Schott Glas=s agent.  The agency question is significant to our
jurisdictional analysis because the Texas contacts of an agent are attributable
to the principal whereas the contacts of an independent contractor are
not.  See Bottle Rock, 108
S.W.3d at 549 n.4; Williamson v. Petrosakh Joint Stock Co., 952 F. Supp.
495, 498 (S.D. Tex. 1997).








An agent 
is one who consents to the control of another to conduct business or
manage some affair for the other, who is the principal.  Bottle Rock, 108 S.W.3d at 549.  An agency relationship cannot be presumed,
and the burden of proof is on the party asserting the existence of the
relationship.  See Royal Mortgage
Corp. v. Montague, 41 S.W.3d 721, 732 (Tex. App.CFort Worth 2001, no pet.); O=Bryant v. Century
21 S. Cent. States, Inc., 899 S.W.2d 270, 271 (Tex. App.CHouston [14th
Dist.] 1995, no writ).  The defining
feature of the agency relationship is the principal=s right to control
the actions of the agent.  Bottle Rock,
108 S.W.3d at 549; Townsend v. Univ. Hosp., 83 S.W.3d 913, 921 (Tex.
App.CTexarkana 2002,
pet. denied).  This right to control
includes not only the right to assign tasks but the right to dictate the means
and details of how the agent will complete these tasks.  Bottle Rock, 108 S.W.3d at 549; Townsend,
83 S.W.3d at 921.  It is this level of
control that distinguishes an agent from an independent contractor.  Bottle Rock, 108 S.W.3d at 549.  As the Austin Court of Appeals explained, 

The Texas cases stress the right of
control.  Where one has the right to
control the end sought to be accomplished but not the means and details of the
accomplishment; that is, only what shall be done, not how it shall be done, the
person employed acts as an independent contractor and not as an agent.

First Nat=l Bank v. Bullock, 584 S.W.2d 548,
551B52 (Tex. Civ. App.CAustin 1979, writ
ref=d n.r.e.).

Whether an agency relationship exists is
generally a question of fact.  Royal
Mortgage, 41 S.W.3d at 733.  The
trial court did not expressly find that Merino was Schott Glas=s agent, but we
presume the trial court impliedly found all necessary facts to support the
judgment if supported by legally and factually sufficient evidence.  ATCC, 83 S.W.3d at 806.  Thus, we construe Schott Glas=s argument that
Merino is not its agent as an attack on the legal and factual sufficiency of
the evidence to support the trial court=s implicit finding
that an agency relationship exists.  See
Bottle Rock, 108 S.W.3d at 549.  In
reviewing factual sufficiency, we examine the entire record, considering both
the evidence in favor of, and contrary to, the challenged findings.  See Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986).  After considering and
weighing all the evidence, we set aside a fact finding only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.  See Pool v. Ford Motor Co.,
715 S.W.2d 629, 635 (Tex. 1986).  In reviewing
for legal sufficiency, we
view the evidence in a light that tends to support the disputed findings and
disregard all evidence and inferences to the contrary.  See Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782 (Tex. 2001).  If more
than a scintilla of evidence exists, it is legally sufficient.  Id. 








Hank Merino testified that he is an
independent sales representative[5]
and that no Schott entity controls the details of his work or directs how he
performs his duties.  Merino hires and
fires his own employees and pays all of his own expenses, and he is compensated
by commission for his sales.  Though he
considers sales advice from Schott Glas when it is offered, Merino decides when
and how he conducts his sales business.  

In support of their argument that Merino
is Schott Glas=s agent, appellees point to evidence
regarding Merino=s sales activities and the interactions
between Schott Glas and Merino, including:

!                  
Merino
made sales calls on Texas customers to sell Schott Glas products, using samples
and promotional materials provided by Schott Glas.

!                  
Merino
had regular communication with Schott Glas=s marketing manager, who traveled to Texas about twice per
year to meet with Merino to provide product information and to visit customers.

!                  
Customers
frequently contacted Merino for service and support regarding their Schott Glas
products.

!                  
Schott
Glas paid some commissions to Merino.








Based on this evidence, appellees assert
that Merino is Schott Glas=s agent.  However, they cite no evidence and make no
argument as to how these actions establish that Schott Glas had control over
the means and details of Merino=s work.  See Moni Pulo, 130 S.W.3d at 176
(repeated assertions that an entity is an agent are irrelevant without evidence
of control); O=Bryant, 899 S.W.2d at 272 (finding that
list of complaints about alleged agent=s behavior were
insufficient to avoid summary judgment on agency issue because appellant
presented no evidence Athat appellee had the right of control
over any of the matters complained of appellant@).  Though sales representatives and agents may
do similar things, every sales representative is not automatically an
agent.  See Applied Polymers of Am. v.
Wright Waterproofing Co., 608 S.W.2d 164, 165 (Tex. 1980).  For example, in Bearry v. Beech Aircraft
Corp., 818 F.2d 370, 372 (5th Cir. 1987), Beech had a network of Texas
dealers that sold nearly $250 million of its products in Texas over a five-year
period.  The Fifth Circuit found that
without evidence that Beech controlled the dealers or had agents in Texas, the
fact that its products were being sold in Texas did not establish general
jurisdiction.  Id. at 375B76; see also
Moni Pulo, 130 S.W.3d at 176 n.13 (A[A] nonresident
does not subject itself to general jurisdiction every time it retains the
benefits that flow from a third-party=s Texas contacts.@).  

Because appellees presented no evidence
that Schott Glas controlled the means and details of Merino=s work, the
evidence is legally and factually insufficient to support the trial court=s implicit finding
that Merino is Schott Glas=s agent.  See Bottle Rock, 108 S.W.3d at
550.  Thus, we do not consider Merino=s Texas contacts
when assessing whether the trial court properly exercised personal jurisdiction
over Schott Glas.

                                     Contacts
of Schott Glas Directly

In the relevant jurisdictional time frame,
it is undisputed that $1,408,134.15 worth of Schott Glas products were shipped
to Texas.  Appellees argue that based on
this volume of sales alone, general jurisdiction is proper.  However, because it is the quality and nature
of the contacts that is important, this fact standing alone is not dispositive
of our inquiry.  ATCC, 83 S.W.3d
at 809B10.  Accordingly, we examine the details of these
sales.








The vast majority of these sales were made
not through Schott Glas but through SE, Schott Glas=s indirect
subsidiary.  As discussed above, SE is a
distinct corporate entity whose Texas contacts may not be attributed to Schott
Glas for jurisdictional purposes. 
Additionally, 98.9% of the shipments were made AF.O.B. Germany,@[6] which means title
to the goods passed in Germany rather than in Texas.  See id. at 808; Zamarron v. Shinko
Wire Co., 125 S.W.3d 132, 144 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).  This is significant for jurisdictional
purposes because by ensuring that title passes outside of the forum state, the
nonresident defendant is not invoking the benefits and protections of the forum=s laws.  See ATCC, 83 S.W.3d at 808; Zamarron,
125 S.W.3d at 145.  

Appellees argue that this F.O.B.
designation is a Ahyper-technical application of
risk-of-loss terms@ that should not be used for assessing
jurisdiction.  However, the Texas Supreme
Court has rejected the argument that the jurisdictional significance of the
F.O.B. designation is a mere Atechnicalit[y],@ reasoning that it
shows the nonresident defendant has exercised its right to deliberately
structure its business to avoid the benefits and protections of the forum.  See ATCC, 83 S.W.3d at 808 (citing Bearry,
818 F.2d at 375B76); see also Zamarron, 125 S.W.3d
at 145 (citing Bearry).  Finding
personal jurisdiction based on such shipments is inconsistent with the notion
that the nonresident defendant must purposefully avail itself of the benefits and
protections of the forum=s laws to be subject to personal
jurisdiction.  See ATCC, 83 S.W.3d
at 806, 808; see also Koll Real Estate, 130 S.W.3d at 312.

The Fifth Circuit=s opinion in Bearry
is particularly instructive.  Beech
delivered over $72 million worth of airframe assemblies to a Texas customer
over a five-year period, all shipped AF.O.B. Wichita
[Kansas].@ 
818 F.2d at 373.  The court held
that such shipments were insignificant in analyzing general jurisdiction,
stating:

Beech exercised its right to
structure its affairs in a manner calculated to shield it from the general
jurisdiction of the courts of other states such as Texas, carefully requiring
the negotiation, completion, and performance of all contracts in Kansas.  Beech has not afforded itself the benefits
and protections of the laws of Texas, but instead has calculatedly avoided
them. . . . We are not aware that other courts have disregarded the structure
of transactions in support of general jurisdiction.  And, we have held such Atechnicalities@ [as when title passes to goods]
relevant in analyzing general personal jurisdiction questions.








Id. at 375B76.  In ATCC, which involved the special
appearance appeal of another defendant in this matter, the Texas Supreme Court
relied on Bearry in holding that ATCC=s Texas sales of
approximately $350,000 a year for eighteen years that were shipped F.O.B.
Rockville, Maryland did not support a finding of general jurisdiction.  83 S.W.3d at 807B08; see also
Zamarron, 125 S.W.3d at 144B45 (following Bearry
in holding that millions of dollars worth of parts sent AF.O.B. Osaka@ did not establish
general jurisdiction).

Appellees also argue that A[a]ny effect of
the F.O.B. terms is made irrelevant by the evidence of [Schott Glas=s] post-sale
service.@  This evidence includes the customer service
provided by Merino and travel to Texas by various Schott Glas personnel,
including its marketing manager, for customer service issues.  Appellees cite no authority for this theory
that post-sale service negates the effect of a non-forum F.O.B. designation.[7]  Indeed, Beech sent representatives to Texas
to demonstrate new aircraft and assist with maintenance problems.  Bearry, 818 F.2d at 373.  Schott Glas=s customer service
contacts can legitimately be analyzed for jurisdictional purposes, but we
reject the notion that post-sale service transforms the sale itself into a
relevant jurisdictional contact when the sale was structured so that title
passed outside of Texas.








In examining Schott Glas=s post-sale
contacts, we find that they are insufficient in themselves to support general
jurisdiction.  Appellees emphasize that
Schott Glas had Merino in place in Texas to handle most of its customer service
issues, but, as already discussed, Merino is not Schott Glas=s agent and thus,
his Texas contacts are not attributable to Schott Glas.  Appellees also point to forty-four visits to
Texas by Schott Glas personnel.  However,
in the relevant time frame, there were just fifteen visits, only six of which
were true customer service visits.  These
trips were all requested by a Texas customer, Honeywell, who did not need any
post-sale service on a product but wanted to discuss possible product changes.  Schott Glas took advantage of its time in Texas
to visit other customers, but the trips were initiated at Honeywell=s request and thus
do not constitute a deliberate contact with the forum for jurisdictional
purposes.  See Bearry, 818 F.2d at
373 (noting that Beech sent representatives to Texas to assist with maintenance
problems and demonstrate new aircraft only at the request of independent Texas
dealers); Connor v. ContiCarriers & Terminals, Inc., 944 S.W.2d 405,
417B18 (Tex. App.CHouston [14th
Dist.] 1997, no writ) (plurality op.) (finding that out of about 500 barge
trips per year, sending only 10 to Texas because of customer requests does not
constitute purposeful contacts to support general jurisdiction).  Of the remaining nine trips, seven were to
attend trade exhibitions, which are irrelevant for jurisdictional purposes
because the participants do not select the location.  See ATCC, 83 S.W.3d at 809.  The last two visits were for a plane change
and a trip to Austin for an unknown reason. 
Such sporadic travel does not constitute the continuous and systematic
contacts necessary to establish general jurisdiction.  See Moni Pulo, 130 S.W.3d at 179
(finding that fifteen visits to Texas over seven years were Aoccasional and
isolated@ and Ainsufficient to
establish general jurisdiction@); Preussag,
16 S.W.3d at 124 (AOccasional travel to Texas is insufficient
by itself to establish continuous and systematic contact.@).

                                                   Conclusion

We conclude that Schott Glas did not have
sufficient minimum contacts with Texas to warrant the trial court=s exercise of
personal jurisdiction over it.  Thus, we
sustain Schott Glas=s first issue.  Because we reverse on this basis, we need not
address the other bases argued for reversal in Schott Glas=s second or third
issues.  We reverse the trial court=s judgment denying
Schott Glas=s special appearance and render judgment
that this action against Schott Glas be dismissed for lack of personal
jurisdiction.

 

 

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Opinion filed August 16, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  Schott
Corporation appeared and answered and did not contest personal jurisdiction.





[2]   See, e.g.,
Access Telecom, Inc. v. MCI Telecomms. Corp., 197 F.3d 694, 717 (5th
Cir. 1999).





[3]  Appellees
argue that under a date of injury analysis, the relevant date is not when the
Gulf War ended in the summer of 1991 but, as with the discovery rule in the
limitations context, the date of discovery of their injuries.  Appellees cite no authority for importing the
discovery rule concept into personal jurisdiction analysis, and we decline to
do so.  The discovery rule is designed to
protect plaintiffs with latent injuries from losing their ability to sue before
their injuries are discovered.  That is
completely unrelated to the goal of general jurisdiction, which is to hold a
nonresident defendant accountable in the forum state when it has purposefully
availed itself of the benefits and protections of the forum=s laws.





[4]  An indirect
subsidiary is one in which Schott Glas does not directly hold stock but Ain which it has a financial interest by virtue of
holding stock in another company that, in turn, holds stock@ in the subsidiary. 
Preussag, 16 S.W.3d at 112 n.2. 
Merino also works with another of Schott Glas=s indirect subsidiaries, Schott Fiber Optics, Inc.,
but since their relationship did not begin until 1992, it is outside the
jurisdictional time frame and thus irrelevant to our minimum contacts analysis.





[5]  Appellees also
contend that Merino did not always make it clear to his customers that he was
an independent contractor or that he was not Schott Glas=s agent.  AHowever, it is settled law in Texas that the mere
declarations of an alleged agent, standing alone, are incompetent to establish
either the existence of the alleged agency or the scope of the alleged agent=s authority.@  Bottle Rock, 108 S.W.3d at 550.





[6]   Most if not
all of the remaining 1.1% of these Texas sales were shipped AF.O.B. Texas@ because
of a clerical mistake in the shipping department.  Such fortuitous contacts cannot establish
general jurisdiction.  See ATCC,
83 S.W.3d at 806; Koll Real Estate, 130 S.W.3d at 312.





[7]   Appellees
attempt to distinguish ATCC by asserting that ATCC did not provide any
service after the sale.  However, the supreme
court=s opinion is completely silent on that issue, and we
do not interpret this silence as establishing that none existed or speculate on
what the supreme court would have done if it had in fact considered such an
argument.