**SCHOTT GLAS, Appellant,**

v.

**Arturo ADAME et al. and Marshall Coleman et al., Appellees.**

No. 14–04–00560–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 16, 2005.

Rehearing Overruled Oct. 20, 2005.

Alene R. Levy, Lynne Liberato, Houston, for appellant.

Francis I. Spagnoletti, James T. Liston, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE BROCK YATES, Justice.

This is an interlocutory appeal from the denial of the special appearance of appellant Schott Glas. Concluding the trial court erred in denying the special appearance, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellees are a class consisting of veterans of the 1991 Persian Gulf War, along with their families and others. The suit was filed in June 1994 and alleges that the defendants caused or contributed to their injuries from so-called "Gulf War Syndrome." In September 1995, appellees named as additional defendants Schott Glas, a German commercial enterprise, and its subsidiary, Schott Corporation, a New York corporation.[1] Schott Glas is a German entity that manufactures and sells specialized glassware, and appellees allege that Schott Glas sold specialized glass vessels to Iraq that were later used in chemical warfare during the Gulf War. At the time of the special appearance hearing, there were over 3,000 named plaintiffs and

1. Schott Corporation appeared and answered and did not contest personal jurisdiction.

over 50 defendants, and appellees assert that the putative class will number as many as 100,000.

Schott Glas filed its special appearance in February 1996, and after extensive jurisdictional discovery, briefing, and hearings, the trial court denied Schott Glas's special appearance. This appeal followed. In three issues, Schott Glas argues that the trial court erred in denying its special appearance because (1) it had insufficient "minimum contacts" with Texas to establish general jurisdiction, (2) exercising jurisdiction over it would violate "traditional notions of fair play and substantial justice," and (3) the trial court erred in overruling its objections to appellees' special appearance evidence.

## ANALYSIS

### *Legal Standard*

■ Whether a trial court has personal jurisdiction over a defendant is a question of law. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.2002) ("*ATCC*"). When the relevant jurisdictional facts are undisputed, we review the trial court's determination de novo. *See id.* at 806; *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). However, when the relevant facts are disputed, a party may challenge the trial court's underlying factual conclusions for legal and factual sufficiency before determining whether the trial court erred in granting or denying a special appearance. *ATCC*, 83 S.W.3d at 806. If the trial court does not issue findings of fact, we presume the trial court resolved all factual disputes in favor of its judgment. *Id.*

■ The Texas long-arm statute governs Texas courts' exercise of personal jurisdiction over a nonresident defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp.2004–2005); *Alenia Spazio, S.p.A. v. Reid*, 130 S.W.3d 201, 210 (Tex.App.-Houston [14th Dist.] 2003, pet. filed). The long-arm statute reaches as far as federal constitutional due process will allow, and thus we rely on both federal and state precedent in reviewing the trial court's personal jurisdiction decision. *ATCC*, 83 S.W.3d at 806; *Alenia Spazio*, 130 S.W.3d at 210.

■ Personal jurisdiction is proper if the defendant has established "minimum contacts" with Texas and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *ATCC*, 83 S.W.3d at 806 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction." *Id.* Thus, a defendant must "purposefully avail" itself of the benefits and protections of Texas law such that the defendant could reasonably anticipate being called into a Texas court. *See id.; Koll Real Estate Group, Inc. v. Howard*, 130 S.W.3d 308, 312 (Tex.App.-Houston [14th Dist.] 2004, no pet.). This ensures that a defendant is subject to personal jurisdiction based on its own purposeful activity and not the unilateral acts of a third party. *ATCC*, 83 S.W.3d at 806; *Koll Real Estate*, 130 S.W.3d at 312. Personal jurisdiction may not be based on Texas contacts that are random, fortuitous, or attenuated. *ATCC*, 83 S.W.3d at 806; *Koll Real Estate*, 130 S.W.3d at 312. It is the quality and nature of the defendant's contacts, rather than the quantity, that is important to the minimum-contacts analysis. *ATCC*, 83 S.W.3d at 809–10.

■ A defendant's contacts with the forum can give rise to either specific or

general jurisdiction. Specific jurisdiction is based on purposeful contacts that give rise to the cause of action. *Id.* at 806. General jurisdiction allows personal jurisdiction based on contacts unrelated to the litigation as long as those contacts are "continuous and systematic." *Id.* at 806–07. In this case, appellees allege only general jurisdiction.

 The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *Id.* at 807; *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 548 (Tex.App.-Houston [14th Dist.] 2003, no pet.). Upon the filing of a special appearance, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *ATCC*, 83 S.W.3d at 807; *Bottle Rock*, 108 S.W.3d at 548. "This standard does not mean that the nonresident defendant must negate every possible ground in the universe, but rather the acts in Texas alleged by the appellant to support personal jurisdiction." *Bottle Rock*, 108 S.W.3d at 548.

### *Jurisdictional Time Frame*

 Before we analyze whether Schott Glas had sufficient minimum contacts with Texas to support the exercise of personal jurisdiction, we must first determine the relevant time frame during which those contacts must have occurred. The parties agree that the jurisdictional time frame begins in January 1986; the issue is

when it ends. Schott Glas contends that its only relevant contacts are those up until the date of appellees' injuries, which is, at the latest, when the Gulf War ended in the summer of 1991. Appellees maintain the jurisdictional time frame ends either on the date the suit was filed, as some federal courts have held,[2] or the date of the injury.[3]

This court and other Texas courts have held that the relevant jurisdictional time frame ends on the date of the injury. *See Scott v. Huey L. Cheramie, Inc.*, 833 S.W.2d 240, 241 (Tex.App.-Houston [14th Dist.] 1992, no writ) (holding that contract signed after injury occurred was irrelevant to jurisdiction); *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 45 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.) (finding the "crucial period" for assessing personal jurisdiction to be when the allegedly defective product was sold and caused injury); *see also MedCost, L.L.C. v. Loiseau*, 166 S.W.3d 421, 434 (Tex.App.-Austin, 2005, no pet. h.) ("The relevant contacts are those up to the time of injury."); *Moni Pulo Ltd. v. Trutec Oil & Gas, Inc.*, 130 S.W.3d 170, 173 n. 1 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (citing *Scott* with approval); *AmQuip Corp. v. Cloud*, 73 S.W.3d 380, 388 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding that telephone calls made after accident date were irrelevant to jurisdiction). Accordingly, we hold that the jurisdictional time frame in this case extends from January 1986 to the summer of 1991, the latest

---

2. *See, e.g., Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).

3. Appellees argue that under a date of injury analysis, the relevant date is not when the Gulf War ended in the summer of 1991 but, as with the discovery rule in the limitations context, the date of discovery of their injuries. Appellees cite no authority for importing the discovery rule concept into personal jurisdic-

tion analysis, and we decline to do so. The discovery rule is designed to protect plaintiffs with latent injuries from losing their ability to sue before their injuries are discovered. That is completely unrelated to the goal of general jurisdiction, which is to hold a nonresident defendant accountable in the forum state when it has purposefully availed itself of the benefits and protections of the forum's laws.

appellees could have been injured. Thus, we will discuss only those contacts occurring during that time period.

### Minimum Contacts

Appellees argue that Schott Glas has sufficient minimum contacts with Texas on the following three bases: (1) by imputing to Schott Glas the contacts of related German entities on the basis that they are a "single business enterprise," (2) by concluding that Hank Merino of Merino Sales, Inc., a sales representative based in Dallas, is Schott Glas's agent and thus imputing Merino's contacts to Schott Glas, and (3) the sale of Schott Glas products in Texas and Schott Glas's alleged post-sale service of goods in Texas. We consider each of these theories in turn.

### a. Contacts of Related Entities

Schott Glas is one of two German affiliates of a third entity, a foundation established under German law over 100 years ago called a "Stiftung." Appellees have, through various theories in their amended petitions, attempted to impute to Schott Glas the contacts of these other two related entities.

In Texas, corporate entities are presumed to be separate, and a plaintiff attempting to assert personal jurisdiction against one defendant based on the contacts of another entity has the burden of proving a basis for doing so. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 798 (Tex.2002); *Le Meridien Hotels & Resorts v. LaSalle Hotel Operating P'ship,* 141 S.W.3d 870, 881 (Tex.App.-Dallas 2004, no pet.); *Koll Real Estate,* 130 S.W.3d at 313. Furthermore, each basis for disregarding this presumption of corporate separateness must be specifically pleaded or it is waived. *See Villanueva v. Astroworld, Inc.,* 866 S.W.2d 690, 695 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

In their latest amended petition, appellees attempt to combine the Texas contacts of these three German entities under the German law theory of "Konzern," asserting that "these entities are to be considered a *Konzern* (group) because they share unified management, participate in a common scheme to make profit, and are under the domination of one player—[the Stiftung]." In their brief, appellees state that they "do not contend that there is evidence showing that any of the Schott entities have failed to follow corporate formalities or have abused the corporate form." Their brief makes no mention of their pleaded Konzern theory, instead arguing the new, unpleaded theory that these three entities constitute a "single business enterprise" and thus, all of their Texas contacts should be considered together. We reject appellees' attempt to argue this unpleaded theory for the first time on appeal. *See Reyes v. Marine Drilling Cos.,* 944 S.W.2d 401, 405 (Tex. App.-Houston [14th Dist.] 1997, no writ) (holding that unpleaded personal jurisdiction theories are negated by proof that defendant is a nonresident); *Villanueva,* 866 S.W.2d at 695 (noting that each basis for disregarding the corporate fiction must be specifically pleaded or be waived). We conclude that appellees' single business enterprise theory has been waived, leaving appellees with no basis on appeal for imputing to Schott Glas any Texas contacts of its related German entities.

### b. Contacts of Alleged Agent

Merino Sales, Inc., owned by Hank Merino, is a Dallas-based company that serves as a sales representative for various companies, including Schott Electronics, Inc. ("SE"), an indirect subsidiary of Schott Glas that is headquartered in

Connecticut.[4] SE sells its own products as well as Schott Glas's products, and Merino promotes and markets those products in Texas. Appellees claim that Merino's Texas contacts should be imputed to Schott Glas. SE and Schott Glas are presumed to be distinct corporate entities, and appellees specifically disavow any claim that "any of the Schott entities have failed to follow corporate formalities or have abused the corporate form." Thus, appellees can impute Merino's Texas contacts to Schott Glas based only on some direct relationship between Schott Glas and Merino, not on Merino's relationship with SE.

■ In an attempt to establish this direct relationship, appellees argue that Merino is Schott Glas's agent. The agency question is significant to our jurisdictional analysis because the Texas contacts of an agent are attributable to the principal whereas the contacts of an independent contractor are not. *See Bottle Rock*, 108 S.W.3d at 549 n. 4; *Williamson v. Petrosakh Joint Stock Co.*, 952 F.Supp. 495, 498 (S.D.Tex.1997).

■ An agent is one who consents to the control of another to conduct business or manage some affair for the other, who is the principal. *Bottle Rock*, 108 S.W.3d at 549. An agency relationship cannot be presumed, and the burden of proof is on the party asserting the existence of the relationship. *See Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 732 (Tex.App.-Fort Worth 2001, no pet.); *O'Bryant v. Century 21 S. Cent. States, Inc.*, 899 S.W.2d 270, 271 (Tex.App.-Houston [14th Dist.] 1995, no writ). The defining feature of the agency relationship is

the principal's right to control the actions of the agent. *Bottle Rock*, 108 S.W.3d at 549; *Townsend v. University Hospital-University of Colo.*, 83 S.W.3d 913, 921 (Tex.App.-Texarkana 2002, pet. denied). This right to control includes not only the right to assign tasks but the right to dictate the means and details of how the agent will complete these tasks. *Bottle Rock*, 108 S.W.3d at 549; *Townsend*, 83 S.W.3d at 921. It is this level of control that distinguishes an agent from an independent contractor. *Bottle Rock*, 108 S.W.3d at 549. As the Austin Court of Appeals explained,

> The Texas cases stress the right of control. Where one has the right to control the end sought to be accomplished but not the means and details of the accomplishment; that is, only what shall be done, not how it shall be done, the person employed acts as an independent contractor and not as an agent.

*First Nat'l Bank v. Bullock*, 584 S.W.2d 548, 551–52 (Tex.Civ.App.-Austin 1979, writ ref'd n.r.e.).

■ Whether an agency relationship exists is generally a question of fact. *Royal Mortgage*, 41 S.W.3d at 733. The trial court did not expressly find that Merino was Schott Glas's agent, but we presume the trial court impliedly found all necessary facts to support the judgment if supported by legally and factually sufficient evidence. *ATCC*, 83 S.W.3d at 806. Thus, we construe Schott Glas's argument that Merino is not its agent as an attack on the legal and factual sufficiency of the evidence to support the trial court's implicit finding that an agency relationship exists.

---

**4.** An indirect subsidiary is one in which Schott Glas does not directly hold stock but "in which it has a financial interest by virtue of holding stock in another company that, in turn, holds stock" in the subsidiary. *Preussag*, 16 S.W.3d at 112 n. 2. Merino also works with another of Schott Glas's indirect subsidiaries, Schott Fiber Optics, Inc., but since their relationship did not begin until 1992, it is outside the jurisdictional time frame and thus irrelevant to our minimum contacts analysis.

*See Bottle Rock,* 108 S.W.3d at 549. In reviewing factual sufficiency, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we set aside a fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). In reviewing for legal sufficiency, we view the evidence in a light that tends to support the disputed findings and disregard all evidence and inferences to the contrary. *See Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001). If more than a scintilla of evidence exists, it is legally sufficient. *Id.*

■ Hank Merino testified that he is an independent sales representative[5] and that no Schott entity controls the details of his work or directs how he performs his duties. Merino hires and fires his own employees and pays all of his own expenses, and he is compensated by commission for his sales. Though he considers sales advice from Schott Glas when it is offered, Merino decides when and how he conducts his sales business.

In support of their argument that Merino is Schott Glas's agent, appellees point to evidence regarding Merino's sales activities and the interactions between Schott Glas and Merino, including:

- Merino made sales calls on Texas customers to sell Schott Glas products, using samples and promotional materials provided by Schott Glas.
- Merino had regular communication with Schott Glas's marketing manag-

er, who traveled to Texas about twice per year to meet with Merino to provide product information and to visit customers.
- Customers frequently contacted Merino for service and support regarding their Schott Glas products.
- Schott Glas paid some commissions to Merino.

■ Based on this evidence, appellees assert that Merino is Schott Glas's agent. However, they cite no evidence and make no argument as to how these actions establish that Schott Glas had control over the means and details of Merino's work. *See Moni Pulo,* 130 S.W.3d at 176 (repeated assertions that an entity is an agent are irrelevant without evidence of control); *O'Bryant,* 899 S.W.2d at 272 (finding that list of complaints about alleged agent's behavior was insufficient to avoid summary judgment on agency issue because appellant presented no evidence "that appellee had the right of control over any of the matters complained of by appellant"). Though sales representatives and agents may do similar things, every sales representative is not automatically an agent. *See Applied Polymers of America v. Wright Waterproofing Co.,* 608 S.W.2d 164, 165 (Tex.1980). For example, in *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 372 (5th Cir.1987), Beech had a network of Texas dealers that sold nearly $250 million of its products in Texas over a five-year period. The Fifth Circuit found that without evidence that Beech controlled the dealers or had agents in Texas, the fact that its products were being sold in Texas did not establish general jurisdiction. *Id.* at 375–76; *see also Moni Pulo,* 130 S.W.3d

**5.** Appellees also contend that Merino did not always make it clear to his customers that he was an independent contractor or that he was not Schott Glas's agent. "However, it is settled law in Texas that the mere declarations of

an alleged agent, standing alone, are incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority." *Bottle Rock,* 108 S.W.3d at 550.

at 176 n. 13 ("[A] nonresident does not subject itself to general jurisdiction every time it retains the benefits that flow from a third-party's Texas contacts.").

Because appellees presented no evidence that Schott Glas controlled the means and details of Merino's work, the evidence is legally and factually insufficient to support the trial court's implicit finding that Merino is Schott Glas's agent. *See Bottle Rock,* 108 S.W.3d at 550. Thus, we do not consider Merino's Texas contacts when assessing whether the trial court properly exercised personal jurisdiction over Schott Glas.

### c. Contacts of Schott Glas Directly

■ In the relevant jurisdictional time frame, it is undisputed that $1,408,134.15 worth of Schott Glas products were shipped to Texas. Appellees argue that based on this volume of sales alone, general jurisdiction is proper. However, because it is the quality and nature of the contacts that is important, this fact standing alone is not dispositive of our inquiry. *ATCC,* 83 S.W.3d at 809–10. Accordingly, we examine the details of these sales.

■ The vast majority of these sales were made not through Schott Glas but through SE, Schott Glas's indirect subsidiary. As discussed above, SE is a distinct corporate entity whose Texas contacts may not be attributed to Schott Glas for jurisdictional purposes. Additionally, 98.9% of the shipments were made "F.O.B. Germany," [6] which means title to the goods passed in Germany rather than in Texas. *See id.* at 808; *Zamarron v. Shinko Wire Co.,* 125 S.W.3d 132, 144 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). This is significant for jurisdictional purposes be-

cause by ensuring that title passes outside of the forum state, the nonresident defendant is not invoking the benefits and protections of the forum's laws. *See ATCC,* 83 S.W.3d at 808; *Zamarron,* 125 S.W.3d at 145.

Appellees argue that this F.O.B. designation is a "hyper-technical application of risk-of-loss terms" that should not be used for assessing jurisdiction. However, the Texas Supreme Court has rejected the argument that the jurisdictional significance of the F.O.B. designation is a mere "technicalit[y]," reasoning that it shows the nonresident defendant has exercised its right to deliberately structure its business to avoid the benefits and protections of the forum. *See ATCC,* 83 S.W.3d at 808 (citing *Bearry,* 818 F.2d at 375–76); *see also Zamarron,* 125 S.W.3d at 145 (citing *Bearry* ). Finding personal jurisdiction based on such shipments is inconsistent with the notion that the nonresident defendant must purposefully avail itself of the benefits and protections of the forum's laws to be subject to personal jurisdiction. *See ATCC,* 83 S.W.3d at 806, 808; *see also Koll Real Estate,* 130 S.W.3d at 312.

The Fifth Circuit's opinion in *Bearry* is particularly instructive. Beech delivered over $72 million worth of airframe assemblies to a Texas customer over a five-year period, all shipped "F.O.B. Wichita [Kansas]." 818 F.2d at 373. The court held that such shipments were insignificant in analyzing general jurisdiction, stating:

> Beech exercised its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of other states such as Texas, carefully requiring the negotiation, completion, and performance of all contracts in Kansas. Beech has not afforded itself

---

6. Most, if not all, of the remaining 1.1% of these Texas sales were shipped "F.O.B. Texas" because of a clerical mistake in the shipping department. Such fortuitous contacts

cannot establish general jurisdiction. *See ATCC,* 83 S.W.3d at 806; *Koll Real Estate,* 130 S.W.3d at 312.

the benefits and protections of the laws of Texas, but instead has calculatedly avoided them.... We are not aware that other courts have disregarded the structure of transactions in support of general jurisdiction. And, we have held such "technicalities" [as when title passes to goods] relevant in analyzing general personal jurisdiction questions. *Id.* at 375–76. In *ATCC*, which involved the special appearance appeal of another defendant in this matter, the Texas Supreme Court relied on *Bearry* in holding that ATCC's Texas sales of approximately $350,000 a year for eighteen years that were shipped F.O.B. Rockville, Maryland did not support a finding of general jurisdiction. 83 S.W.3d at 807–08; *see also Zamarron*, 125 S.W.3d at 144–45 (following *Bearry* in holding that millions of dollars worth of parts sent "F.O.B. Osaka" did not establish general jurisdiction).

Appellees also argue that "[a]ny effect of the F.O.B. terms is made irrelevant by the evidence of [Schott Glas's] post-sale service." This evidence includes the customer service provided by Merino and travel to Texas by various Schott Glas personnel, including its marketing manager, for customer service issues. Appellees cite no authority for this theory that post-sale service negates the effect of a non-forum F.O.B. designation.[7] Indeed, Beech sent representatives to Texas to demonstrate new aircraft and assist with maintenance problems. *Bearry*, 818 F.2d at 373. Schott Glas's customer service contacts can legitimately be analyzed for jurisdictional purposes, but we reject the notion that post-sale service transforms the sale itself into a relevant jurisdictional contact when the sale was structured so that title passed outside of Texas.

In examining Schott Glas's post-sale contacts, we find that they are insufficient in themselves to support general jurisdiction. Appellees emphasize that Schott Glas had Merino in place in Texas to handle most of its customer service issues, but, as already discussed, Merino is not Schott Glas's agent and thus, his Texas contacts are not attributable to Schott Glas. Appellees also point to forty-four visits to Texas by Schott Glas personnel. However, in the relevant time frame, there were just fifteen visits, only six of which were true customer service visits. These trips were all requested by a Texas customer, Honeywell, who did not need any post-sale service on a product but wanted to discuss possible product changes. Schott Glas took advantage of its time in Texas to visit other customers, but the trips were initiated at Honeywell's request and thus do not constitute a deliberate contact with the forum for jurisdictional purposes. *See Bearry*, 818 F.2d at 373 (noting that Beech sent representatives to Texas to assist with maintenance problems and demonstrate new aircraft only at the request of independent Texas dealers); *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 417–18 (Tex.App.-Houston [14th Dist.] 1997, no writ) (plurality op.) (finding that out of about 500 barge trips per year, sending only 10 to Texas because of customer requests does not constitute purposeful contacts to support general jurisdiction). Of the remaining nine trips, seven were to attend trade exhibitions, which are irrelevant for jurisdictional purposes because the participants do not select the location. *See ATCC*, 83 S.W.3d at 809. The last two visits were for a plane change and a trip to Austin for

---

7. Appellees attempt to distinguish *ATCC* by asserting that ATCC did not provide any service after the sale. However, the supreme court's opinion is completely silent on that issue, and we do not interpret this silence as establishing that none existed or speculate on what the supreme court would have done if it had in fact considered such an argument.

an unknown reason. Such sporadic travel does not constitute the continuous and systematic contacts necessary to establish general jurisdiction. *See Moni Pulo*, 130 S.W.3d at 179 (finding that fifteen visits to Texas over seven years were "occasional and isolated" and "insufficient to establish general jurisdiction"); *Preussag*, 16 S.W.3d at 124 ("Occasional travel to Texas is insufficient by itself to establish continuous and systematic contact.").

## CONCLUSION

We conclude that Schott Glas did not have sufficient minimum contacts with Texas to warrant the trial court's exercise of personal jurisdiction over it. Thus, we sustain Schott Glas's first issue. Because we reverse on this basis, we need not address the other bases argued for reversal in Schott Glas's second or third issues. We reverse the trial court's judgment denying Schott Glas's special appearance and render judgment that this action against Schott Glas be dismissed for lack of personal jurisdiction.