Affirmed and Memorandum Opinion filed October 31, 2006















Affirmed and Memorandum Opinion filed October 31, 2006.

 

 

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00074-CV

_______________

 

KENNETH D. LATHROP, Appellant

 

V.

 

PERSONALYSIS CORP., Appellee

                                                                                                                                               


On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 04-31493

          
                                                                                                                                     

 

M E M O R A N D U M 
O P I N I O N

In this accelerated appeal, appellant
Kenneth D. Lathrop appeals the denial of his special appearance, arguing that
the trial court=s implied findings of fact are contradicted by the record,
and its implied conclusions of law overlook the due process requirement of
purposeful availment as set forth in Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777 (Tex. 2005). 
We affirm.




I.  Factual and Procedural History

In 1996,
Lathrop was hired by Manatech Washington, Inc. (AManatech@), a Washington corporation with its principal place of
business in Spokane County,
 Washington.  As a licensee
of appellee Personalysis
Corp., a Texas
corporation, Manatech was an authorized distributor
of the Personalysis personality test and related
consulting services.  Lathrop provided consulting services to Manatech based on his clients= purchase of Personalysis
tests and reports.  Personalysis sent client
questionnaires to Manatech, and Manatech
gave the questionnaires to Lathrop or to a Manatech
employee to deliver to Lathrop=s clients.  After completing the questionnaire, the
client returned the form to Lathrop or directly to Manatech. 
Manatech then forwarded the questionnaire results to Personalysis in Texas. 
Personalysis scored the questionnaires and emailed
the results to Manatech or directly to Lathrop. 
Lathrop received such emails from Personalysis twice
daily.  Lathrop then uploaded the emailed results into a software program
called Personalysis for Windows (APFW@).  The software allowed Lathrop
to prepare detailed reports for his clients on the personality traits revealed
by the Personalysis test.  Manatech
retained a PFW software disk in the safe of its president, Pat Powers, and
Powers loaded the software onto the computers of consultants such as
Lathrop.  Lathrop did not have his own copy of the software disk.  In
Lathrop=s consulting work and in his
workshops with clients, Lathrop also used a slide presentation prepared by Personalysis in Houston. 
Occasionally, Lathrop would receive a new slide to incorporate into the Personalysis slide presentation. 

 

On April
18, 1997, and July 7, 1999, Lathrop signed non-compete and non-disclosure
agreements with Manatech.  In each of these
agreements, Lathrop agreed he would not disclose or use Atrade secrets, customer lists, marketing
plans or strategies and other confidential information and knowledge concerning
[Manatech=s] business and activities@ to Manatech=s detriment.  Lathrop further
agreed he would not Autilize[,] deliver[,] or convey any of the
technologies or products which are utilized, delivered[,] or conveyed by [Manatech], generally including but not limited to the
copyrighted technologies of James R. Noland and/or [Personalysis].@[1]  Under the terms of both
agreements, Manatech and Lathrop agreed that any
dispute arising from the agreements would be litigated in Spokane County,
Washington, and that the agreements would be governed by laws of the State of
Washington.

During
the time Lathrop worked directly for Manatech, he
attended Personalysis training in Houston on two or three occasions.  On
three occasions, Lathrop telephoned the Houston
office of Personalysis. 

In 2001,
Lathrop=s employment status with Manatech changed, and he became an independent contractor
rather than an employee.  On August 16, 2001, Lathrop signed an agreement
in which Personalysis granted both Lathrop and Powers
a license to use Personalysis=s software.  Lathrop and Powers
agreed they would not Amodify, translate, reverse engineer,
decompile, disassemble, create derivative works based on, or copy@ the Personalysis
software or its documentation.  The license agreement contains no forum or
venue selection clause, and by its express terms, is governed by Texas law.

On
September 7, 2001, Lathrop entered into a Sales Representative Agreement with Manatech.  The language of this agreement differed
somewhat from the prior agreements: 

[Lathrop] covenants and agrees that neither [he] nor
his/her marketing agents or administrate [sic] employees shall develop[] for
sale or distribution any materials, such as videotapes, training materials, and
the like, directly related to the use or understanding of Personalysis
and Manatech copyrighted materials . . . This
agreement supercedes any and all other agreements,
either oral or in writing, between the parties hereto with respect to the
working arrangement between [Manatech] and [Lathrop],
and contains all of the covenants and agreements between the parties with
respect to such contract arrangements in any manner whatsoever.  This
agreement shall be governed by and construed in accordance with the laws of the
State of Washington.@ 


 

Although the September 7,
2001 Sales Representative Agreement is governed by Washington law, it contains no forum or
venue selection clauses.  On the same date, however, Lathrop and Manatech executed a third non-disclosure and non-compete
agreement governed by the laws of the State of Washington, and requiring the
parties to litigate any dispute arising from that agreement in Spokane County,
Washington.  

Lathrop
subsequently developed and marketed a personality test he called AHardwired.@  Personalysis
sued Lathrop in Texas, alleging that Lathrop used completed Personalysis
questionnaires, corresponding test scores, and information learned during his
training sessions in Texas to reverse engineer the scoring methodology of the Personalysis test.  Lathrop filed a special appearance
denying he had sufficient contacts with Texas
to justify the trial court=s assumption of personal jurisdiction over him.  The
parties conducted discovery concerning the jurisdictional issues, and after two
hearings, the trial court denied Lathrop=s special appearance.  This
accelerated appeal ensued. 

II.  Issues Presented

Lathrop
presents three issues for our review.  First, he contends the trial court=s assertion of specific jurisdiction
over him violates his due process rights because the trial court did not follow
Athe purposeful availment mandates of Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777 (Tex. 2005).@  In his second issue, Lathrop
argues that Personalysis=s specific jurisdiction claims fail
because there is no evidence that trade secrets or confidential information
were disclosed to him in Texas, and thus, nothing in Texas gives rise to Personalysis=s claims.  Finally, Lathrop
seeks attorneys= fees and costs for defending jurisdictional allegations Athat were based on false and falsely
verified jurisdiction affidavits,@ and contends that Personalysis failed to properly investigate before filing
this suit and failed to dismiss when no evidence existed to support its
allegations.




III.  Standard of Review

Whether
a trial court has personal jurisdiction over a defendant is a question of
law.  Schott Glas v. Adame, 178 S.W.3d 307, 312 (Tex. App.CHouston [14th Dist.]
2005, pet. denied).  When the relevant jurisdictional facts are
undisputed, we review the trial court=s determination de novo.  Id. 
However, when the relevant facts are disputed, a party may challenge the trial
court=s underlying factual conclusions for
legal and factual sufficiency before determining whether the trial court erred
in granting or denying a special appearance.  Id.  If the trial court does not
issue findings of fact, we presume the trial court resolved all factual
disputes in favor of its judgment.  Id. 
When the appellate record includes the reporter=s and clerk=s records, these implied findings are
not conclusive and may be challenged for legal and factual sufficiency.  BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002). 


The
plaintiff has the initial burden of pleading sufficient allegations to bring
the nonresident defendant within the provisions of the Texas long-arm statute.  Schott Glas, 178 S.W.3d at 313. 
A defendant=s contacts with the forum can give rise to either specific or general
jurisdiction.  Id. at 312B13.  Specific
jurisdiction is based on purposeful contacts that give rise to the cause of
action.  Id. at 313.  General jurisdiction allows personal
jurisdiction based on contacts unrelated to the litigation as long as those
contacts are Acontinuous and systematic.@  Id.  Upon
the filing of a special appearance, the burden shifts to the defendant to
negate all bases of personal jurisdiction alleged by the plaintiff.  Id.  AThis standard does not mean that the
nonresident defendant must negate every possible ground in the universe, but
rather the acts in Texas alleged by the appellant to support personal
jurisdiction.@  Walker Ins. Servs. v.
Bottle Rock Power Corp., 108 S.W.3d 538, 548 (Tex. App.CHouston [14th Dist.]
2003, no pet.). 

 

Personal
jurisdiction is proper if the defendant has established Aminimum contacts@ with Texas and the exercise of
jurisdiction comports with Atraditional notions of fair play and substantial
justice.@  Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing Int=l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95
(1945)).  AThe purpose of the minimum-contacts
analysis is to protect the defendant from being haled into court when its
relationship with Texas is too attenuated to
support jurisdiction.@ 
Id. 
Instead, a defendant must Apurposefully avail@ itself of the privilege of
conducting activities in Texas and of the
benefits and protections of Texas law such
that the defendant could reasonably anticipate being called into a Texas court.  Schott
Glas, 178 S.W.3d at 312. 


A
defendant is subject to personal jurisdiction based on its own purposeful
activity and not the unilateral acts of a third party.  Michiana, 168 S.W.3d at 785. 
Consequently, Ait is only the defendant=s contacts with the forum that count@ when determining whether he has
purposefully availed himself of the privilege of conducting business in Texas.  See id. 
Finally, it is the quality and nature of the defendant=s contacts, rather than the quantity,
that is important to the minimum-contacts analysis.  Schott Glas, 178 S.W.3d at 312. 
Random, fortuitous, or attenuated contacts with the forum state are
insufficient to confer personal jurisdiction.  Michiana,
168 S.W.3d at 785.  

IV.  Analysis

 

In its
original petition, Personalysis alleged that the
trial court had personal jurisdiction over Lathrop Abecause Lathrop=s actions in the State of Texas give
rise to the causes of action in this case, and Lathrop is the alter ego of
Hardwired and Lathrop & Associates.@[2]  Personalysis
sued for (a) breach of the software license agreement of August 13, 2001;
(b) breach of Lathrop=s September 7, 2001 sales representative agreement with Manatech; (c) breach of Lathrop=s non-disclosure and non-compete
agreements with Manatech dated April 18, 1997 and
September 7, 2001; (d) misappropriation of trade secrets; (e) unfair
competition, (f) statutory theft; and (g) conspiracy.  In addition,
after conducting discovery related to jurisdiction, Personalysis
filed a supplemental response to Lathrop=s special appearance, alleging
additional bases of jurisdiction.  Specifically, Personalysis
alleged that the software license agreement required partial performance in Texas, and therefore,
the trial court could properly exercise jurisdiction over Lathrop as a party to
the contract.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 17.042(1) (Vernon 1997) (providing
that a nonresident does business in this state if the nonresident contracts
with a Texas resident and either party is to perform the contract in whole or
in part in this state).  Lathrop did not object to this asserted basis for
personal jurisdiction.  Personalysis also added
assertions of general jurisdiction, alleging that ALathrop personally availed himself to Texas [sic] by establishing a consulting practice that
relied exclusively on products and services from Personalysis@ in Texas.[3]


 

Lathrop
argues that because he objected to Personalysis=s assertions of general jurisdiction,
the trial court did not consider whether general jurisdiction exists.  In
support of this argument, Lathrop relies on Zimmerman v. Glacier Guides,
Inc., 151 S.W.3d 700, 704 (Tex. App.CWaco 2004, no pet.)
(stating that Aa nonresident defendant bears the
burden of negating all bases of personal jurisdiction alleged in the plaintiff=s pleadings or raised without
objection by the evidence.@) (emphasis added)  However, in
its order denying Lathrop=s special appearance, the trial court states it considered
all supplemental briefing and exhibits and granted leave for the filing of such
exhibits and briefing.  Thus, the trial court impliedly overruled Lathrop=s objection to consideration of the
issue of general jurisdiction.             
On appeal, Lathrop does not challenge the trial court=s ruling on the grounds that there is
no general jurisdiction, nor does he contend the trial court erred in
overruling his objection to Personalysis=s claims of general jurisdiction; to
the contrary, Lathrop insists that the trial court denied his special
appearance based on specific jurisdiction and did not consider the issue of
general jurisdiction.  This argument ignores the trial court=s implied ruling on Lathrop=s objection to Personalysis=s supplemental response.  

Generally
speaking, an appellant must attack all independent bases or grounds that
support a complained-of ruling or judgment.  Britton
v. Tex. Dept. of Criminal Justice, 95 S.W.3d 676, 681 (Tex. App.CHouston [1st Dist.]
2002, no pet.).  If the appellant fails to do so, then
we must affirm the ruling or judgment if supported by the record.  Id. 
Consequently, we must sustain the trial court=s ruling if Lathrop failed to
establish that specific jurisdiction did not arise from his acts in Texas or from the
software license agreement, or if the record supports a finding of general
jurisdiction.

A.       
Due Process Challenge to Specific Jurisdiction

Lathrop
first argues that the trial court=s implied findings of fact are
contradicted by the record, and its implied conclusions of law overlook the due
process requirement of purposeful availment. 
The requirements of purposeful availment and minimum
contacts are related: a nonresident defendant that has Apurposefully availed@ itself of the privileges and benefits of conducting business in the foreign jurisdiction has
sufficient contacts with the forum to confer personal jurisdiction.  Burger King Corp. v. Rudzewicz,
471 U.S.
462, 474B76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); BMC Software, 83
S.W.3d at 795.  Lathrop argues that (a) the trial court erred
in failing to enforce the forum selection clauses of his nondisclosure
agreements with Manatech, (b) Lathrop=s visits to Texas do not satisfy the
minimum contacts requirement because he traveled to Texas as a Manatech employee at Personalysis=s invitation, and any disclosure by Personalysis in Texas was Personalysis=s unilateral act.




1.        
The Trial Court=s Alleged Refusal to Enforce the
Forum-Selection Clauses in the Non-Disclosure Agreements

Here, all the written agreements between Manatech and Lathrop prior to August 16, 2001, contain

provisions requiring those specific agreements
to be governed by the laws of the State of 

Washington, and requiring the parties to
litigate any dispute arising from the agreements in Spokane 

County, Washington.  Relying on these agreements,
Lathrop contends the trial court erred in 

refusing to enforce Athe forum-selection clauses in the
non-disclosure agreements upon which 

Personalysis brought its third-party beneficiary
claims . . .@
However, on August 16, 2001, Lathrop 

entered into a license agreement directly
with Personalysis for the first time.  That
license 

agreement contains no forum or venue selection
clause, and by its express terms, is governed by 

Texas law.  A[D]eletion
of a forum-selection clause designating a foreign jurisdiction is some 

evidence that local jurisdiction was
anticipated.@  Michiana, 168 S.W.3d at
792.  Hence, there is 

some evidence that, at least in disputes
between Personalysis and Lathrop, jurisdiction in Texas was 

Aanticipated.@  Id.  AAlthough not determinative, foreseeability is an important consideration in 

deciding whether the nonresident defendant
has purposefully established >minimum contacts= with 

the forum state.@  BMC Software, 83 S.W.3d
at 795.    

2.        
Lathrop=s Visits to Texas

Lathrop
contends that Personalysis bases its claims of
jurisdiction in part on  Lathrop=s visits to Texas at Personalysis=s invitation.  He further
contends  he did not initiate these visits, but
was required to attend by his employer, Manatech. 
However, the evidence relating to whether Manatech
required his attendance is equivocal, as is demonstrated by Lathrop=s deposition testimony:

Q:        As part of that contract,
were you required to go to Houston
to learn training techniques?

 

A:        I don=t know if we were required.  I know that Personalysis would invite us down.  I don=t remember a portion of the contract that said it was
a requirement.  I think I remember Pat [Powers] talking about early on
that it was a requirement that you had to go down for training, but I can=t recall that specific language in my contract.

Q:        All right.  Do you
believe that you were required to go to Houston?

A:       
YesCwell,
yeah, I thinkCI
felt I was required.  If I wasn=t required in writing, Pat [Powers]
would have not looked at it kindly if I had refused to go.

Moreover,
in analyzing minimum contacts, it is not the number, but rather the quality and
nature of the nonresident defendant=s contacts with the forum state that
are important.  Guardian Royal Exch. Assur.,
Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 230
n.11 (Tex.
1991).  Lathrop=s contacts with Texas do not arise solely from isolated
visits to the State at the request or requirement of a third party, but are
rooted in Lathrop=s continuing relationship with Personalysis,
of which these visits are a part.[4] 
This Acontinuing relationship@ most closely resembles the franchising relationship
described in Burger King Corp. v. Rudzewicz,
471 U.S. 462, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985).  

 

In Burger King,
the Supreme Court noted that Burger King licenses its franchisees to use its
trademarks and service marks and leases standardized restaurant facilities to
them.  471 U.S.
at 464, 105 S. Ct. at 2178.  In
addition, Afranchisees acquire a variety of proprietary information concerning the >standards, specifications, procedures
and methods for operating a Burger King restaurant.@ 471 U.S. at 464B65, 105 S. Ct.
at 2178.  Franchisees also receive ongoing training.  Id.  Burger
King=s contracts with its franchisees
provide that the franchise relationship is established in Miami, governed by
Florida law, and requires all fees and notices to be sent to Burger King=s Miami headquarters.  Id. at
465B66, 105 S. Ct. at 2178.  Day-to-day monitoring of
franchisees is conducted through a network of district offices that report to Miami.  Id.

Rudzewicz, the appellant in Burger King, applied for a
franchise by sending his application to the local district office.  Id. at
466, 105 S. Ct. at 2179.  The
application was forwarded to Miami, and Rudzewicz negotiated the ensuing agreements directly with Miami.  Id. at 466B67,
2179.  Rudzewicz negotiated with Burger
King by mail and telephone.  Id. at 468, 105 S. Ct. at 2179B80.  However, Rudzewicz never traveled to Florida.

In
holding that the trial court could properly exercise specific jurisdiction over
Rudzewicz, the Supreme Court emphasized that parties Awho reach out beyond one state and
create continuing relationships and obligations with citizens of another state= are subject to regulation and
sanctions in the other State for the consequences of their activities.@  Id. at 473, 105 S. Ct.
at 2182.  The Court further stated:

The unilateral activity of those who claim some
relationship with a nonresident defendant cannot satisfy the requirement of
contact with the forum State. 
The application of that rule will vary with the quality and nature of the defendant=s activity, but it is essential in
each case that there be some act by which the defendant purposefully avails
itself of the privilege of conducting activities within the forum State, thus
invoking the benefits and protections of its laws.

Id. at 474B75, 105 S. Ct. at 2183.  This Apurposeful availment@ requirement Aensures that a defendant will not be haled
into a jurisdiction solely as a result of >random,= >fortuitous,= or >attenuated= contacts, or of the >unilateral activity of another party
or a third person.=@ Id. (internal citations omitted).  Where the
defendant deliberately has created A>continuing obligations= between himself and residents of the
forum, he manifestly has availed himself of the privilege of conducting
business there . . . .@ 
Id. at 475B76, 105 S. Ct.
at 2184.  As the Texas Supreme Court summarized the case, A[a] long-term franchise agreement may
establish minimum contacts because, though it stems from a single contract, it
involves many contacts over a long period of time.@  Michiana, 168 S.W.3d at 787.

 

Here,
the license agreement between Lathrop and Personalysis
is governed by the laws of the State of Texas, and states that the software Ashould be used by persons affiliated with
Licensee [i.e., Powers and Lathrop] who have been trained by the Licensor [Personalysis] to use the Personalysis
Management System.@ (emphasis added).  See Burger King, 471 U.S. at 482,
105 S.Ct. 2174 (holding that choice-of-law provisions
should not be ignored in considering whether a defendant has Apurposefully invoked the benefits and protections
of a State=s laws@).  Unlike the appellant in Burger King, Lathrop made one
two-day training trip and one or two additional one-day trips to the forum
state.  Although those trips were made while Lathrop was employed by Manatech, additional trips to Texas were contemplated in Lathrop=s sales representative agreement with
Manatech of September 7, 2001, which states: AThe contractor should attend all annual
training session[s] to stay current on new products and workshop format. 
All travel expense for training in Spokane or
Houston will
at [sic] the contractor[=]s expense.@ (emphasis added).  

Similar
to the appellant in Burger King, Lathrop agreed to follow the
procedures, policies, standards, and materials of the licensing corporation: 

Lathrop shall promote, offer training programs and do
consulting conforming to such procedures, policies, standards, materials and
the like as have been prescribed by Personalysis
Corp., a Texas Corporation[,] and no other manner . . . Ken
Lathrop agrees not to dispose, sell or offer for sale any item or services that
do not conform to such standards, specifications, proportions, appearance,
quality, or characteristics as may be prescribed by Personalysis
Corp.[,] a Texas Corporation[,] and approved by [Manatech].

Lathrop=s day-to-day activities were
monitored by Manatech, a local licensee analogous to
the local district office reporting directly to the forum state in Burger
King.

 

Although
Lathrop denies engaging in prolonged communications by mail, email, fax, or
telephone with Personalysis of the type found in Burger
King, Lathrop does admit that, in addition to his training visits, he
telephoned Personalysis three times and received
emails directly from Personalysis twice a day. 
Although we do not consider the emails as part of Lathrop=s contacts with Texas because Ait is only the defendant=s contacts with the forum that count,@[5] the emails illustrate the continuing
relationship between Lathrop and Personalysis,
provide context for Lathrop=s visits and the license agreement, and indicate that Lathrop=s contacts with Texas are not random,
fortuitous, attenuated, or the result of the unilateral activity of another
party or a third person. 

B.       
Evidentiary Challenge to Specific Jurisdiction

In his
second issue, Lathrop appears to challenge the legal sufficiency of the
evidence supporting the trial court=s ruling.  He argues that Personalysis=s specific jurisdiction claims must fail
because there is no evidence that trade secrets or confidential information
were disclosed to him in Texas, and therefore, nothing in Texas gave rise to Personalysis=s claims. 
        Adrienne McDunn,
Avice president executive consultant@ of Personalysis,
met with Lathrop at least twice in Houston. 
She testified that Lathrop was given a reference manual in Houston, and that the manual was
confidential.  Lathrop testified in his deposition that the reference
manual is publicly available, and that he obtained the same manual before he
was employed by Manatech.  Lathrop contends that
Personalysis gave no documents to him in Houston that were confidential or that Lathrop had not
already received in Washington.

However,
not all of the information Lathrop received in Houston was in document form.  In her
affidavit, McDunn testified that while Lathrop was in
Houston, she disclosed confidential information to him that was not found in
the manual, including information regarding how the Personalysis
test was designed, the importance of word selection in the questionnaire, the
importance of comparing words of different types, the specific theory behind
the test, how to teach interpretation of the test, and business strategy on
using the test to develop business.  McDunn
further testified:

 

I made clear to Mr. Lathrop that the confidential
information that was disclosed, was not to be disclosed to clients.  Based
on my discussions with Mr. Lathrop, at the time of the disclosure, he
understood that the information was confidential and not to be disclosed to
clients or third parties, and was not to be used by him outside of his
consulting with the Personalysis test.

Personalysis contends Lathrop used the information obtained in Texas, his
access to Personalysis questionnaires in Washington,
and the test results he received by email to reverse engineer the test, thereby
breaching the licensing agreement.  For the purpose of determining
jurisdiction, McDunn=s testimony is evidence that Lathrop
received confidential information or trade secrets in Houston.  When considered in conjunction
with the continuing relationship between Lathrop and Personalysis,
we conclude that the evidence is legally and factually sufficient to support
the trial court=s implied finding that Lathrop failed to negate all bases of
specific personal jurisdiction.[6]

C.       
Lathrop=s Motion for Sanctions

Because Personalysis refused to dismiss the suit, Lathrop moved for
sanctions under  Tex. R. Civ. P. 13, alleging that Personalysis
produced no evidence in jurisdictional discovery to support its contentions. 
Although this court has jurisdiction to review the denial of a defendant=s special appearance, we do not have
jurisdiction to hear an interlocutory appeal of the denial of a motion for
sanctions.  See Tex. Civ.
Prac. & Rem. Code Ann. ' 51.014 (Vernon Supp. 2006).  Accordingly, we
dismiss this issue.

 

V.  Conclusion

We hold
that Lathrop failed to negate all bases of personal jurisdiction, and that the
evidence is legally and factually sufficient to support the trial court=s finding of specific
jurisdiction.  Accordingly, we affirm the trial court=s judgment.

 

 

 

/s/        Eva M.
Guzman

Justice

 

 

Judgment Rendered and Memorandum Opinion filed October
31, 2006.

Panel consists of Justices Anderson, Hudson, and
Guzman. 

 














[1]  Noland developed the Personalysis
test.





[2]  Hardwired and Lathrop & Associates were initially
parties to the action; however, the trial court granted their respective
special appearances and they were dismissed from the case for lack of personal
jurisdiction.





[3]  Personalysis also
alleged that ALathrop has injected his Hardwired test into the >stream of commerce=@
and must expect the test to enter Texas. 
However, the evidence presented indicated that Hardwired, and not Lathrop
personally, licenses distributors to market and sell the test, including a single
identified distributor who markets on the internet.  Moreover, Lathrop
presented evidence that none of the personality tests he developed have been
sold in Texas.





[4]  Personalysis contends
that specific jurisdiction exists in part because Lathrop attended training in Texas, then used the
confidential information he learned during those training sessions to reverse
engineer the Personalysis test and create his own
personality assessment test.  According to Lathrop, however,  Athe only
alleged in-state conduct was Personalysis=[s] own purported disclosures, which should not have
been considered in the purposeful availment analysis.@  This argument ignores that Lathrop was in Texas
for the purpose of receiving the training which, according to Personalysis, included confidential information. 





[5]  Michiana, 168
S.W.3d at 785 (emphasis added).





[6]  Lathrop argues that specific jurisdiction
cannot be based on his software licensing agreement with Personalysis
because (a) Lathrop signed the agreement in Washington, (b) the contract was
signed years after his visits to Texas, (c) Lathrop did not negotiate the
contract, (d) the contract provides no warranty benefits, (e) the contract
never provided Lathrop access to the software program disk, and (f) the
contract does not permit Lathrop access to Personalysis
trade secrets or confidential information.  In light of our prior holding,  we need not determine whether the software licensing
agreement, viewed in isolation, would have supported a finding of personal
jurisdiction.