**Opinion issued December 19, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00924-CV

————————————

## STOCKSY UNITED, Appellant

## V.

## SAVANNAH MORRIS, Appellee

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2017-68883**

---

## O P I N I O N

This is an interlocutory appeal from an order denying a special appearance. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7). Kristen Curette, a Texas resident, photographed Savannah Morris, another Texas resident, and then uploaded the photographs onto a website without Morris's effective consent.

Stocksy United, a Canadian cooperative that runs the website, then licensed the photographs to various third parties located throughout the world. Morris sued Stocksy for misappropriation of likeness. Stocksy filed a special appearance, and, in response, Morris argued that Stocksy is subject to specific jurisdiction because Curette acted as Stocksy's agent when she took the photographs and uploaded them onto the website. The trial court agreed with Morris.

We hold that the evidence is insufficient to support the trial court's legal conclusion that Curette acted as Stocksy's agent and that Morris has not otherwise alleged facts that, if true, bring Stocksy within the reach of Texas's long-arm statute. Accordingly, we reverse the trial court's order, grant Stocksy's special appearance, and dismiss Morris's claim against Stocksy for lack of personal jurisdiction.

## Factual Background

This case arises from photographs of a minor that were taken without parental consent, uploaded onto a stock photography website, and then licensed to various third parties for commercial use. It involves three main parties.

The first is Savannah Morris, the minor depicted in the photographs at the center of the dispute. Now an adult, Morris is a resident of Texas, which is where the photoshoots took place.

The second is Kristen Curette, the photographer who shot Morris and uploaded the photographs onto the website. Like Morris, Curette is a resident of Texas.

The third is Stocksy United, a privately held Canadian cooperative that operates the website onto which Curette uploaded the photographs of Morris. Stocksy is incorporated under the laws of Alberta, Canada and headquartered in British Columbia, Canada. Stocksy does not have a registered agent in Texas, is not authorized to do business in Texas, does not maintain a place of business in Texas, and does not have any employees or agents who work in Texas.

Stocksy is a platform cooperative that licenses stock photography for advertisements and other commercial uses. It has three classes of shareholders. The first, Class A, is made up of advisors, including the chief executive officer. The second, Class B, is made up of staff. The third, Class C, is made up of the photographers who supply the content to Stocksy's curated online gallery. The majority of Stocksy's shareholders belong to Class C. Currently, there are almost 1,000 of these Class C shareholder-contributors ("Contributors"), hailing from some 65 countries. Each Contributor owns one non-par value share and has one vote.

Stocksy's Contributors take photographs, edit them, and then submit them to Stocksy. Stocksy, in turn, reviews the photographs and, upon approval, adds them

3

to its online gallery. Third parties may then purchase licenses to use the photographs. The revenue from the sale of such licenses is then split between Stocksy and the Contributor who supplied the photograph.

Stocksy periodically makes an online "Call to Artists" soliciting membership applications from photographers and other potential Contributors. When Stocksy makes a "Call to Artists," Stocksy does not target photographers from any geographic area in particular, but it rather seeks applications from photographers from all over the world. Once Stocksy approves an application, Stocksy and the applicant enter into two agreements.

The first is the Member Agreement, which is the document by which Stocksy transfers one Class C share to the photographer, thereby making the photographer a Stocksy Contributor. The Member Agreement contains a choice-of-law clause establishing the laws of Canada as the governing law.

The second is the Member Supply Agreement, which governs the terms by which the Contributor supplies content for license through Stocksy's website. Under the Member Supply Agreement, the Contributor takes photographs at his or her discretion and without direction or oversight from Stocksy. The only requirements are that the photographs be original work[1] and that model releases be

---

[1]    Section 3(c) provides, in part, that: "All Content delivered to the Cooperative pursuant to this Agreement shall: (i) be submitted to Stocksy on an exclusive basis and shall not have been licensed to, or otherwise be the subject of any other right

obtained for all recognizable persons depicted in the photographs.[2] Like the Member Agreement, the Member Supply Agreement contains a choice-of-law clause establishing the laws of Canada as the governing law.[3] It also contains a forum-selection clause requiring that disputes arising from or relating to the agreement be resolved in Canadian courts.[4] Finally, the Member Supply Agreement provides that the Contributor supplies content to Stocksy as an independent contractor:

> The relationship between [Stocksy] and the [Contributor] under this Agreement is that of independent contractors. For clarification purposes, the parties are not joint venturers, partners, principal and

---

given or granted to, any person; and (ii) be original creations and expressions of subject matter."

[2] Section 3(e) provides: "The Member will deliver signed model releases and/or property releases, where relevant, to the Cooperative upon delivery of the respective Content, such releases to be in a form approved by Cooperative, and the Member will keep all original releases and provide copies to the Cooperative immediately upon request."

[3] Section 12 provides, in part, that: "The Member acknowledges and agrees that this Agreement and all matters as to his or her access, delivery and use of the Site and/or the Content shall be construed and governed by the laws of the Province of Alberta and the laws of Canada applicable therein."

[4] Section 12 continues: "All actions and disputes arising from or relating to this Agreement and all matters as to the Member's access, delivery and use of the Site and/or the Content or other materials shall be heard and decided exclusively before the courts located within the Province of Alberta, Canada and the Member irrevocably attorns and submits to the exclusive jurisdiction of the courts of the Province of Alberta and waive any right the Member might otherwise have to claim lack of personal jurisdiction or inconvenience of forum."

5

agent, or employer and employee. Neither party shall have the power to bind or obligate the other in any manner.

In February 2013, Curette became a Stocksy Contributor. She entered into a Member Agreement and Member Supply Agreement and created an online profile on Stocksy's website onto which she could upload her photographs.

The events giving rise to the current dispute occurred roughly two years later, on February 8, 2015, when Curette attended an "Instameet" in Houston, Texas. An Instameet is an event at which aspiring models can meet photographers. At the Instameet, Curette met Morris, and the two had an hour-long photoshoot. About half way through, Curette asked Morris to sign a model release so Curette could add the photographs of Morris to her portfolio. Morris signed the release, but then informed Curette that she was only 16 years old. Curette then suggested that Morris sign a parental consent form on her mother's behalf. Morris initialed the form, and the two finished the photoshoot.

Five days later, on February 13, 2015, Curette and Morris met for another photoshoot. During the shoot, Curette told Morris that she would provide her with copies of the photos she had taken after editing them. Curette also requested that Morris add her birthdate to the model release. Morris did so, confirming that she was a minor.

6

Sometime after the February photoshoots, Curette uploaded the photographs of Morris onto her online Stocksy profile, and Stocksy began offering to license the use of the photographs to third parties.

Curette and Morris met for a third photoshoot on August 5, 2015. During the shoot, Morris complained that she still had not received copies of photos taken of her.

Four days later, on August 9, 2015, Morris learned that a photograph depicting her likeness was being used in an online advertisement for contact lenses. Morris texted Curette, who confirmed that the advertisement was one of the photographs that Curette had taken of Morris. Morris told Curette that her mother, April Morris, was upset by the release of the photographs and wanted them taken down. Curette promised that she would not upload any other photographs and that she would provide Morris with digital copies soon.

Later that October, Morris learned that another photo of her was being used in an online advertisement for student loans. Morris told her mother, and her mother, in turn, discovered Morris's likeness depicted in various online advertisements, including in advertisements for adult dating websites and prescription drugs for opiate addiction. She also discovered various photographs of Morris for sale on Stocksy.

7

Morris's mother contacted Stocksy to demand the removal of the photographs of her daughter from the website. Morris's mother spoke with Stocksy's in-house lawyer, Margaret Vincent. She told Vincent that the photographs were of a minor and that Stocksy did not have parental consent to use them. She demanded that Stocksy remove them from its website immediately. She further demanded that Stocksy provide her with (1) copies of every photograph of Morris in Stocksy's possession, (2) the identity of every person and entity that had purchased any such photographs, and (3) an accounting of the sums of money that had been (a) paid to the photographer who took the photographs and (b) collected from third parties in exchange for any such photographs.

Citing privacy concerns, Vincent refused to provide Morris's mother with the identities of the entities that had purchased licenses to use photographs of her daughter. She did, however, provide a copy of the release signed by Morris and provided to Stocksy by Curette, including the section initialed by Morris under "parent or guardian." Vincent introduced Morris's mother to Curette over email and encouraged them to communicate with one another directly about the matter.

After Vincent's introduction, Curette called Morris's mother, who told Curette that she wanted her daughter's photographs removed from every website operated or controlled by Curette and every website operated or controlled by the

8

persons and entities that had purchased the photographs. Curette said that she could "fix it," and Morris's mother responded, "well, you need to fix it and then call me."

The parties were unable to resolve the dispute, and Morris filed suit.

**Procedural History**

On October 17, 2017, Morris filed an original petition against Curette and Stocksy.[5] She asserted a claim for misappropriation of likeness and sought a declaratory judgment that the model release and parental consent she signed do not constitute a valid waiver under Texas law. In the section of her petition addressing the trial court's jurisdiction, Morris alleged that Stocksy is a Canadian corporation whose principal office is in Victoria, British Columbia, Canada. She further alleged that Stocksy does not have a registered agent in the United States and may be served in accordance with the Hague Service Convention.[6] Morris made no other jurisdictional allegations concerning Stocksy.

On March 9, 2018, Stocksy filed a special appearance. Stocksy asserted that it is not a Texas resident and that Morris had failed to plead sufficient facts to bring Stocksy within the reach of the Texas long-arm statute. Stocksy supported its special appearance with the affidavit of its in-house lawyer, Vincent. In her

---

[5] Morris also asserted claims against Curette's eponymous business, Kristen Curette Photography, LLC.

[6] Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

affidavit, Vincent stated, in relevant part, that Stocksy is a privately-held Canadian cooperative incorporated in Alberta, Canada, and headquartered in British Columbia, Canada. She further stated that Stocksy does not have a registered agent in Texas; is not authorized to do business in Texas; does not maintain a place of business in Texas; and does not have any employees, agents, or servants in Texas.

On April 2, 2018, Morris filed an amended petition and a response to Stocksy's special appearance. In the two pleadings, Morris asserted that Stocksy solicited photographers in Texas through its online "Call to Artists" campaign and that Stocksy accepted and sold Curette's photographs knowing the photographs were taken in Texas. Morris further asserted that Curette was a part owner of Stocksy and that her Texas contacts should therefore be imputed to Stocksy.

On May 18, 2018, Stocksy filed an amended special appearance. Stocksy denied directing any marketing efforts to Texas specifically. It also denied invoking the benefits or protections of Texas law, emphasizing that it purposefully structured its contracts, including those relating to membership and licensing, to avoid benefitting from any jurisdiction other than the Province of Alberta, Canada. Stocksy asserted that Morris's claim arose from the unilateral activities of Curette and that Curette's contacts could not be imputed to Stocksy because Curette lacked authority to act on Stocksy's behalf. Stocksy further asserted that imputing

10

Curette's contacts to Stocksy would defeat the purpose of Stocksy's organizing itself as a cooperative (which is like a corporation with respect to liability).

Stocksy supported its amended special appearance with an excerpt from the Member Agreement and a revised affidavit from Vincent. In her revised affidavit, Vincent repeated the statements from her original affidavit and further stated that Stocksy does not conduct business in Texas, does not maintain or keep any servers in Texas, and does not direct any marketing effort to Texas for the purpose of soliciting sales or potential Contributors. Vincent further stated that Stocksy did not review or approve any photographs of Morris in Texas and did not license any of Morris's photographs to Texas residents.

On July 9, 2018, Morris filed a response to Stocksy's amended special appearance. In the response, Morris asserted that Curette's Texas contacts should be imputed to Stocksy because Curette was acting as Stocksy's agent when she photographed Morris and committed the other acts giving rise to this suit.

On August 31, 2018, Stocksy filed a reply to Morris's response. In its reply, Stocksy asserted that Curette was not, and never had been, Stocksy's agent. Stocksy supported its reply with copies of the Member Agreement and Member Supply Agreement as well as a revised affidavit from Vincent. In the revised affidavit, Vincent stated that Curette is an independent contractor of Stocksy and

that Stocksy does not control the means or process by which Curette performs her work.

On October 1, 2018, the trial court signed an order denying Stocksy's special appearance. The trial court later issued findings of fact and conclusions of law. *See* TEX. R. CIV. P. 296. The trial court found, in relevant part, that an agency relationship exists between Stocksy and Curette and that Stocksy is subject to specific jurisdiction because Curette was acting in her capacity as Stocksy's agent when she photographed Morris and uploaded the photographs onto Stocksy's website.

Stocksy appeals.

**Special Appearance**

On appeal, Stocksy argues that the trial court erred in denying its special appearance because Morris has failed to show that Curette is Stocksy's agent and has not otherwise alleged facts establishing specific jurisdiction.

**A.     Applicable law and standard of review**

A nonresident defendant is subject to personal jurisdiction in Texas if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction does not violate the due process guarantees of the federal and state constitutions. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The Texas long-arm statute allows the exercise of personal jurisdiction to

reach as far as the federal constitutional requirements of due process will allow. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 17.042.

The exercise of personal jurisdiction is consistent with due process when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly*, 301 S.W.3d at 657. A nonresident defendant establishes minimum contacts with the forum state when it purposefully avails itself of the privilege of conducting activities within the state, thus invoking the benefits and protections of its laws. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009).

Depending on the nature of a nonresident's contacts, personal jurisdiction may be either general or specific. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). General jurisdiction is party-focused, whereas specific jurisdiction is transaction-focused. This case concerns specific jurisdiction.

A trial court has specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state were purposeful and (2) the cause of action arises from or relates to those contacts. *Kelly*, 301 S.W.3d at 658. When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37.

Under the first prong of specific jurisdiction, the nonresident defendant must purposefully avail itself of the privilege of conducting activities in the forum state. *Id.* In determining whether a nonresident defendant has purposefully availed itself of the privileges of conducting activities in Texas, we consider the defendant's own actions without considering the unilateral activity of any other party and ask (1) whether the defendant's actions were purposeful rather than random, isolated, or fortuitous, and (2) whether the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

Under the second prong of specific jurisdiction, there must be a "substantial connection" between the defendant's forum contacts and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). In determining whether there is a substantial connection, we consider the relationship between the defendant, the forum, and the litigation. *Kelly*, 301 S.W.3d at 658.

Whether a court can exercise personal jurisdiction over nonresident defendants is a question of law, which we review de novo. *Id.* at 657.

In a special appearance, the plaintiff and the defendant have shifting burdens of proof. *Id.* at 658. The plaintiff has the initial burden of pleading sufficient facts to bring a defendant within the reach of the Texas long-arm statute. *Id.* If the

14

plaintiff meets her initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* If, however, the plaintiff fails to meet her initial burden, the defendant need only prove that it is not a Texas resident to negate jurisdiction. *See id.* at 658–59.

Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Id.* at 658. The defendant has no burden to negate a potential basis for personal jurisdiction when it is not pleaded by the plaintiff. *See id.*

The defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659. Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.*

When, as here, the trial court denies a special appearance and issues findings of fact and conclusions of law relating to its ruling, the defendant may challenge the fact findings on legal and factual sufficiency grounds. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review a trial court's conclusions of law as a legal question. *Id.* The defendant may not challenge a trial court's conclusions of law for factual insufficiency; however, we may review the

trial court's legal conclusions drawn from the facts to determine their correctness. *Id.* If we determine a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. *Id.*

**B.     Analysis**

We begin by considering Morris's principal argument for jurisdiction, which is the argument the trial court found persuasive—i.e., Morris's argument that Stocksy is subject to specific jurisdiction because Curette acted as Stocksy's agent when she photographed Morris and committed the other acts giving rise to the dispute.

Under Texas law, an agency-based theory of imputed contacts may serve as the basis for the exercise of personal jurisdiction over a foreign defendant. *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 85 (Tex. App.—Houston [1st Dist.] 2008, no pet.). However, the existence of an agency relationship is never presumed, and the party alleging it has the burden of proving it. *Id.* at 83. It was therefore Morris's burden to prove an agency relationship between Stocksy and Curette. *See id.* She failed to do so.

Morris contends that Curette is an agent of Stocksy by virtue of her shareholder status. She argues that, "as part owner, Curette is clearly an agent for Stocksy." We disagree.

16

Shareholder status is not ipso facto proof of agency. Instead, the "essential feature" of agency is the "right of control." *Id.* at 85. Here, the evidence presented by Stocksy shows that it did not have a right to control Curette when she photographed Morris, edited the photographs, and uploaded them onto her Stocksy profile.

Stocksy supported its special appearance with the Member Supply Agreement, which governs how Curette supplies content to Stocksy. Under the Member Supply Agreement, Curette produces and supplies content as she sees fit and without direction or oversight from Stocksy. The Member Supply Agreement expressly provides that Curette works as an independent contractor: "The relationship between [Stocksy] and [Curette] under this Agreement is that of independent contractors." *See WaterWorks Corral Creek, LLC v. AquaTech Saltwater Disposal LLC*, No. 03-16-00309-CV, 2018 WL 988907, at *10 n.9 (Tex. App.—Austin Feb. 21, 2018, pet. dism'd) (rejecting plaintiff's agency theory of imputed contacts and noting that contract between alleged agent and defendant "specifically provides that [the alleged agent] is being hired [by the defendant] as an independent contractor"). It further provides that Curette is *not* Stocksy's agent: "For clarification purposes, the parties are not joint venturers, partners, principal and agent, or employer and employee. Neither party shall have the power to bind or obligate the other in any manner."

Stocksy further supported its special appearance with affidavits from Vincent, which confirmed that Curette produced and supplied the photographs of Morris as an independent contractor, not an agent. In her affidavits, Vincent generally stated that Stocksy does not have any agents in Texas. She then specifically addressed Curette, stating that Curette is an independent contractor of Stocksy and that Stocksy does not control the means or process by which Curette performs her work.

Morris did not dispute or present evidence otherwise rebutting the validity of the Member Supply Agreement or the accuracy of Vincent's statements. We hold that Morris failed to meet her burden of proving that Curette is Stocksy's agent. Because Morris failed to meet her burden, the trial court erred in concluding that Curette's Texas contacts may be imputed to Stocksy. *See Capital Fin. & Commerce AG*, 260 S.W.3d at 83; *see also Schott Glas v. Adame*, 178 S.W.3d 307, 317 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (rejecting agency theory of imputed contacts because nonresident manufacturer did not control details of resident sales representative's sales), *abrogated on other grounds by PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163 (Tex. 2007).

In addition to her agency-theory of jurisdiction, Morris contends that Stocksy is subject to specific jurisdiction based on its own Texas contacts. Morris contends that Stocksy licenses photographs to Texas residents and solicits content

18

from Texas photographers through its Call to Artists campaigns. She further contends that Stocksy accepted and sold Curette's photographs knowing the photographs were taken in Texas. According to Morris, these contacts are sufficient to establish specific jurisdiction. Again, we disagree.

First, there is no evidence that Stocksy licensed any of the photographs of Morris to third parties in Texas. In her affidavit, Vincent stated as much, and Morris has presented no evidence to the contrary.

Second, the evidence does not show that Stocksy's Call to Artists campaign specifically solicits photographers in Texas. In her affidavit, Vincent stated that Stocksy does not direct marketing efforts to Texas for the purpose of soliciting potential Contributors. Stocksy's online Call to Artists campaigns are not directed to photographers from Texas. They are not directed to photographers from anywhere in particular. Instead, they seek applications from photographers from all over the world. Because the campaigns do not specifically target Texas photographers, they do not justify the exercise of specific jurisdiction in this case. *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 737 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (rejecting argument that "that because potential customers *anywhere* could purchase a tour ticket through [defendant]'s website, jurisdiction is proper *everywhere*—including Texas").

Third, given that Stocksy does not specifically solicit Texas photographers for content, it is merely fortuitous that the photographs that Stocksy accepted from Curette in this case came from Texas and not some other jurisdiction, such as Nayarit, Mexico, or Lyonnais, France. Stocksy's selling the photographs does not constitute a contact with Texas since Stocksy did not sell the photographs from Texas or to someone living there.

Finally, we observe that both the Member Agreement and Member Supply Agreement contain choice-of-law clauses establishing Canada law as the governing law. We further observe that the Member Supply Agreement contains a forum-selection clause requiring that disputes arising from or relating to the agreement be resolved in Canadian courts. Though not dispositive, these clauses cannot be ignored, and they indicate that Stocksy did not purposefully avail itself of the benefits and protections of Texas law. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 75 (Tex. 2016) (holding no jurisdiction when defendant "structured the transaction so as to neither benefit from Texas law nor subject itself to Texas courts' jurisdiction."); *Michiana*, 168 S.W.3d at 792 (holding choice-of-law and forum-selection clauses establishing foreign law and forum for dispute resolution suggest no local availment intended).

We hold that Stocksy's alleged contacts with Texas are not purposeful and that the trial court therefore erred in overruling Stocksy's special appearance.

## Conclusion

We reverse the trial court's order overruling Stocksy's special appearance and render judgment dismissing Morris's claims against it for lack of personal jurisdiction.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Countiss.